Edward L. MURNANE, Appellant, Equal
Employment Opportunity Commission,
(Plaintiff-Intervenor),

v.

AMERICAN AIRLINES, INC.

Edward L. MURNANE, Equal Employ-
ment Opportunity Commission, (Plain-
tiff-Intervenor), Appellant,

v.

AMERICAN AIRLINES, INC.

Nos. 80–1025, 80–1186.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 20, 1981.

Decided Oct. 1, 1981.

Certiorari Denied April 5, 1982.
See 102 S.Ct. 1770.

Eugene R. Fidell, Washington, D. C., with whom Michael F. McBride, Washington, D. C., was on brief for appellant Murnane.

Karen MacRae Smith, Attorney, E.E. O.C., Washington, D. C., with whom Lutz Alexander Prager, Attorney, E.E.O.C., Washington, D. C., was on brief for appellant E.E.O.C.

Dean Booth, Atlanta, Ga., with whom J. Stanley Hawkins, Atlanta, Ga., was on brief for appellee.

Before WILKEY and MIKVA, Circuit Judges, and GORDON,* Senior United States District Judge for the Western District of Kentucky.

Opinion for the Court filed by Senior United States District Judge JAMES F. GORDON.

JAMES F. GORDON, Senior United States District Judge:

This appeal follows the district court's entry of judgment, following trial,[1] dismissing the complaint of plaintiff-appellant Edward L. Murnane and intervenor Equal Employment Opportunity Commission (EEOC). Appellant alleges that appellee American Airlines (American) discriminated against him on account of age. He initiated this cause under the Age Discrimination in Employment Act of 1967 (ADEA), as amended, Title 29 U.S.C. § 621, *et seq.*, which declares in relevant part that it shall be unlawful for an employer

to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . .

*Id.* § 623(a). We affirm the district court's dismissal of appellant's complaint.

---

* Sitting by designation pursuant to 28 U.S.C. § 294(e).

1. The opinion below dismissing appellant's complaint is reported at *482 F.Supp. 135* (D.D. C.1979).

## I.  FACTUAL BACKGROUND

On April 1, 1976, appellant applied for employment as a Flight Officer with American, stating in his application that he was forty-three years of age. The position of Flight Officer is the first of three employment levels, i.e., Flight Officer, Co-pilot and Captain, which ultimately leads to a captaincy in an American cockpit. However, consideration of appellant for employment never advanced beyond the application phase, nor was he ever accorded an interview with American Airlines. In January of 1977, appellant registered a complaint to American about the lack of attention paid to his application and, being dissatisfied with American's response, then filed with the Department of Labor a complaint in which he alleged that American was discriminating against him in employment on the basis of age. The Department's informal conciliation efforts proved fruitless, and, on November 21, 1977, appellant was notified of his right to sue pursuant to the ADEA. This action was commenced on June 30, 1978.

The gravamen of appellant's claim arises out of appellee's established employment hiring practices. American maintains three cockpit positions, Flight Officer, Co-pilot and Captain. It is American's fixed policy to require all Flight Officers to advance to the position of Captain. No one is hired by American without this goal in mind. This is referred to as American's "up-or-out" policy. More specifically, if a Flight Officer or Co-pilot has received the maximum amount of training required for such position and is not qualified at that juncture to advance to the next post, then it is American's policy to terminate such person's employment.[2] American's procedures do not allow for a career as a Flight Officer or Co-pilot. Finally, *American has a general guideline against hiring persons over the*

---

2. The district court found that it takes an average of fourteen to twenty years to progress from the position of Flight Officer to that of Captain under American's extensive training system. There was, however, other evidence indicating that some employees might advance to the Captain's position in as few as ten years.

*age of thirty*[3] *for the beginning position of Flight Officer.*

## II.  LEGAL ISSUES

The district court correctly found that appellant is a member of that class of persons intended to be protected under the ADEA, 29 U.S.C. § 631, and that appellant established a *prima facie* case of discrimination.  However, the district court dismissed appellant's complaint because it went on to find:

1) That American's age forty guideline was a bona fide occupational qualification pursuant to 29 U.S.C. § 623(f)(1), and

2) That appellant would not have been hired in any event in view of the fact that he was not *competitively* qualified for the position of Flight Officer.

It is these two findings which appellant challenges on appeal.  We shall consider each in turn.

### A.  *Applicant's Age Is A Bona Fide Occupational Qualification*

■ The ADEA provides at 29 U.S.C. § 623(f)(1) that:

It shall not be unlawful for an employer

.    .    .    .    .

to take any action otherwise prohibited under [subsection (a)] . . . of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age. . . .

The issue before this court, then, is whether age is a "bona fide occupational qualification" (BFOQ) which is "reasonably necessary to the normal operation" of the airline business.  We conclude that it is.

The evidence entered at trial indicates that "pilot error" accounts for 90 percent of all aviation accidents, but that the incidence of aviation accidents decreases as the pilot gains experience.  Moreover, the district court found "credible and persuasive" evidence that "the *best* experience an American Captain can have is acquired by flying American aircraft in American's three cockpit positions."  482 F.Supp. at 147 (emphasis in the original).  Thus, the safest Captain will be experienced, and as much of that experience as possible will have been with American.

But since it takes at least ten to fifteen years to progress from Flight Officer to Co-pilot to Captain, if appellant were hired as Flight Officer in his forties he would probably not become Captain until his late fifties.  The Federal Aviation Administration itself requires retirement at age 60, so that he would be able to serve only briefly as an American Captain before he had to retire.  Appellant would then be replaced by another pilot, also new to captaincy in an American cockpit.  On the other hand, by limiting its new hiring to relatively young pilots, American thereby ensures that the experience with American of its active Captains will be maximized.  This, as we pointed out earlier, maximizes safety.[4]

Appellant contends that the district court's findings indicate only a marginal increase in the safety of the passengers on an American aircraft, and that such marginal safety is insufficient to support a blanket age rule.  He asserts that a BFOQ cannot be supported by a minimal increase in safety when balanced against the fact that many potential applicants will not be able to pursue their chosen careers.  We disagree.[5]

3.  For our purposes, we consider the guideline only at age forty inasmuch as those persons under the age of forty do not fall within that class of persons protected by the ADEA.  It is thus unnecessary to address the validity of any age thirty guideline.

4.  It is noteworthy to us that the district court did not premise his BFOQ determination on a finding that there exists a correlation between the increased chronological age of a pilot and

his or her decreased ability to operate an aircraft in a safe manner.  On the contrary, he concluded that an older Captain who had served in that position for the longest possible period of time would be the safest Captain.

5.  Appellant also argues that instances can be postulated, especially over the short run, where he might be a safer Flight Officer than a younger hire.  But we cannot say that the district court erred in its conclusion that these counter-

■ Indeed, on the contrary, we find the maximization of safety to be "reasonably necessary to the normal operation" of American Airlines. The safe transportation of its passengers is the *essence* of American's business, see, *Diaz v. Pan American World Airways, Inc.*, 442 F.2d 385, 388 (5th Cir.), *cert. denied*, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971), and there exists a Congressional mandate that an airline must operate its business with "the highest possible degree" of care. 49 U.S.C. § 1421(b). On this matter the following observation by the court in *Harriss v. Pan American World Airways, Inc.*, 437 F.Supp. 413 (N.D.Cal. 1977), *aff'd in relevant part*, 649 F.2d 670 (9th Cir. 1980), is especially pertinent:

> As an air carrier with a public duty to operate with the highest degree of safety, Pan Am is in the business of avoiding and managing the risks resulting from low probability occurrences which could have extremely serious consequences. Indeed, such risk management is of the essence of Pan Am's business, since aircraft accidents and incidents are invariably unique and low probability occurrences.

437 F.Supp. at 434. American likewise is in the business of managing risk factors and probabilities. As the district court observed and emphasized, the airline industry is one in which safety is of the utmost importance. The staggering death tolls and resulting human suffering which have followed some of our nation's horrible air disasters attest to this fact. Therefore, in our judgment, the airline industry must be accorded great leeway and discretion in determining the manner in which it may be operated *most safely, Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224, 236 n.30 (5th Cir. 1976). This is in accord with American's view that "safe" is not sufficient. Rather, the "safest" possible air transportation is the ultimate goal. Courts, in our view, do not possess the expertise with which, in a cause presenting safety as the critical element, to supplant their judgments for those of the employer.

Appellant's argument concerning the undisputed fact that all Captains, irrespective of their ages, must begin with no experience as Captains is similarly not persuasive. The fact remains that, as previously indicated, American's intended goal of maintaining a staff of Captains which has the longest possible record of experience in American cockpits is, in our opinion, completely justified. We believe that the district court's findings of fact, many of which were agreed to by the parties, support the conclusion that American's hiring policies, including the age forty guideline, might result in the death of one less person than were American required to abandon or modify these policies. See, *Hodgson v. Greyhound Lines, Inc.*, 499 F.2d 859, 863 (7th Cir. 1974), *cert. denied sub nom. Brennan v. Greyhound Lines, Inc.*, 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 822 (1975).

■ In sum, there was ample factual evidence and legal precedent to support the findings of the district court. We conclude that American's age forty guideline was a bona fide occupational qualification "reasonably necessary to the normal operation" of American Airlines.[6]

### B. *Appellant Is Not Competitively Qualified*

■ Even if the age forty guideline were not a bona fide occupational qualification, we think it clear that appellant would still not have been hired since he was not *competitively* qualified for the position of

---

vailing considerations were outweighed, especially over the long run, by the greater safety ensured in the other situations just discussed in the text. In particular, it should be pointed out that it is more important to have a safe *Captain* than a safe *Flight Officer*, see 482 F.Supp. at 145–46; appellant's arguments apply to the latter, but appellee's policies ensure the former.

**6.** We are further convinced that an economic benefit *which is merely incidental or collateral*

to an otherwise perfectly valid BFOQ is not sufficient reason to declare the same legally invalid. American concedes in its brief that the economy of the situation favors the hiring of younger Flight Officers who ultimately will serve more years as Captains on American's airplanes. But this does not change the fact that there are substantial safety benefits to the public as a result of American's implementation of the hiring practice at issue herein.

Flight Officer. As the district court pointed out in its thorough examination of this issue, "it is clear from credible and persuasive evidence that plaintiff [appellant] would not have been selected during the later stages of the pilot selection process." 482 F.Supp. at 148. There was strong evidence of major deficiencies in both appellant's judgment and in his flying skill itself. This case is therefore within the principles enunciated by the Supreme Court in *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977).

In *East Texas* the Supreme Court stated that "[t]he District Court found upon abundant evidence that these plaintiffs lacked the qualifications to be hired as line drivers. Thus, they could have suffered no injury as a result of the alleged discriminatory practices ...." *Id.* at 403–404, 97 S.Ct. at 1897. In a footnote to this text, the Supreme Court reviewed the deficiencies in plaintiff's job performance, and concluded that "[i]n light of this evidence, the District Court's finding that none of the respondents was qualified to be a line driver was not clearly erroneous." *Id.* at 404 n.9, 97 S.Ct. at 1897. Finally, the Court pointed out, *"Even assuming,* arguendo, *that the company's failure even to consider the applications was discriminatory, the company was entitled to prove at trial that the respondents had not been injured because they were not qualified and would not have been hired in any event." Id.* (emphasis added).

Similarly, in *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the Supreme Court said that in anti-discrimination litigation the courts must allow the employer to show that the party alleging discrimination was "not a victim of discrimination. For example, the employer might show that there were other, more qualified persons who would have been chosen for a particular vacancy, or that the ... [plaintiff's] stated qualifications were insufficient." *Id.* at 369 n.53, 97 S.Ct. at 1872, citing *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 773 n.32, 96 S.Ct. 1251, 1268, 47 L.Ed.2d 444 (1976) ("[Defendant] may attempt to prove that a given individual ... was not in fact discriminatorily refused employment.... [E]vidence indicating the individual's lack of qualification ... would of course be relevant."). See also, *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 284–87, 97 S.Ct. 568, 574–76, 50 L.Ed.2d 471 (1977).

In the case at hand, as we have already stated, there is "credible and persuasive evidence" that appellant would not have been selected for the position he claims to have been illegally denied, whether or not the age requirement he objects to was illegally discriminatory. Therefore, applying the principles in the Supreme Court cases just discussed, we conclude that appellant cannot prevail on this appeal.

### III. CONCLUSION

The district court found, first, that American's age forty guideline was a bona fide occupational qualification and, second, that appellant would not have been hired in any event since he was not competitively qualified. We agree with both these findings. The decision of the district court is therefore

*Affirmed.*