Joyce M. JOHNSON, As Executrix of the Estate of C.R. Johnson, Deceased, Hubert L. Henderson, and Charles H. Cate, For and in Behalf of Themselves and All Others Similarly Situated, Plaintiffs-Appellants,

v.

AMERICAN AIRLINES, INC.,
Defendant-Appellee.

Lucille D. JOHNSON, As Executrix of the Estate of Fred G. Johnson, Deceased, Plaintiff-Appellant,

v.

AMERICAN AIRLINES, INC.,
Defendant-Appellee.

No. 83–1610.

United States Court of Appeals,
Fifth Circuit.

Nov. 8, 1984.

---

Haley, Bader & Potts, Raymond C. Fay, Alan M. Serwer, Chicago, Ill., for plaintiffs-appellants.

Kilpatrick & Cody, G. Dean Booth, William H. Boice, Joseph W. Dorn, Atlanta, Ga., for defendant-appellee.

Before GARZA, REAVLEY and JOHNSON, Circuit Judges.

REAVLEY, Circuit Judge:

Twenty-two employees of American Airlines brought an action against American alleging violation of the Age Discrimination in Employment Act (ADEA). 29 U.S.C. §§ 621–634 (1982). The ADEA provides that,

> It shall be unlawful for an employer—
> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; [or]
> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age;

29 U.S.C. § 623(a) (1982). The district court dismissed plaintiffs' action upon a jury verdict in favor of American. We affirm.

The operating crew of most aircraft in American's fleet consists of a captain, copilot, and flight officer. The captain is in command of all aspects of the aircraft and its crew. The copilot is second in command and assists the captain in flying the aircraft. The flight officer monitors the aircraft's fuel, electrical, hydraulic and other systems before, during, and after the flight but does not do any piloting of the aircraft.

In 1964, as a result of the increased operational complexity of jet aircraft and an alarming number of American aircraft accidents in the early 1960's, American al-

tered its cockpit crew training and hiring policies. The hiring policy adopted was to hire only future captains as flight officers [1] and to require crew members to train and qualify for the next highest cockpit position, to which one would move in accordance with seniority and American's needs. Under this up-or-out policy, if a crew member is ever unable to progress to the next highest cockpit position, he or she must transfer to a noncockpit position or be terminated.

The present ADEA action arose as a result of the effect of American's up-or-out policy in conjunction with the so-called FAA age sixty rule. Under the age sixty rule, captains and copilots for commercial aircraft carriers are required to retire from these positions at age sixty. 14 C.F.R. § 121.383(c) (1984). The age sixty rule does not apply to flight officers. However, because American's up-or-out policy requires flight officers to be capable of advancing to pilot positions and because pilots must retire at sixty, American's flight officers must also retire or transfer to noncockpit positions at age sixty.

Plaintiffs in this action are or were American flight crew members who desire to continue in the flight officer position after their sixtieth birthdays. Plaintiffs claim that American's refusal to employ them as flight officers violates the ADEA.

American denied that it discriminated on the basis of age and argued alternatively that the up-or-out policy was a bona fide occupational qualification (BFOQ). The ADEA provides that an employer may discriminate on the basis of age if the employee's age is a BFOQ. 29 U.S.C. § 623(f)(1) (1982). American presented evidence that employing ex-captains who could not advance to the pilot position would block that position from use as a training seat for future pilots (seat blocking). American also introduced evidence that some ex-captains in the flight officer position (and it would be impossible to predict which ex-captains) would endanger the safety of American flights by disrupting crew coordination and reverting to captaincy behavior in times of emergencies (back seat driving). American also introduced into evidence over plaintiffs' timely objection the amount of two plaintiffs' lump sum retirements.

The issues on appeal are: first, whether a BFOQ defense must be solely related to age; second, whether the district court erred in instructing the jury regarding the BFOQ defense; third, whether there was an absolute absence of evidence to establish a BFOQ defense; and fourth, whether the district court erred in admitting evidence of plaintiffs' retirement benefits.

### 1. Whether a BFOQ Defense Must Be Related Solely to Age

■ Plaintiffs, in attacking the jury instructions and sufficiency of the evidence, assert that the BFOQ defense must relate solely to age and the employee's ability to perform the job assigned. Applying the facts of this case, plaintiffs argue that American's seat blocking and back seat driver contentions cannot, as a matter of law, be grounds for a BFOQ defense, because they are related to factors of American's overall training procedures and the ex-captain's seniority and experience.

■ The BFOQ defense is regarded as a narrow exception to the general prohibition against age discrimination. *Air Line Pilots Association v. Trans World Airlines, Inc.*, 713 F.2d 940, 951 (2d Cir.1983), *cert. granted sub nom. Trans World Airlines, Inc. v. Thurston*, —— U.S. ——, 104 S.Ct. 1412, 1706, 79 L.Ed.2d 739 (1984). No opinion has fully addressed the issue whether a BFOQ defense must relate solely to the employee's age. Two decisions, however, have reached opposite results without much discussion on the issue. First,

---

**1.** Prior to the adoption of this policy American hired mechanics to fill the position now held by flight officers. Known as flight engineers, these mechanics did not progress to pilot positions. With the exception of ten flight engineers ac-quired through merger with another airline, American has hired no flight engineers since 1964. American still employs approximately 450–480 flight engineers.

*Smallwood v. United Air Lines, Inc.*, 661 F.2d 303, 308 (4th Cir.1981), *cert. denied*, 456 U.S. 1007, 102 S.Ct. 2299, 73 L.Ed.2d 1302 (1982), held that the airline could not defend its maximum hiring age of thirty-five as a BFOQ, because the alleged harm to the cockpit crew was a function of seniority and not age. On the other hand, in *Murnane v. American Airlines, Inc.*, 667 F.2d 98 (D.C.Cir.1981), *cert. denied*, 456 U.S. 915, 102 S.Ct. 1770, 72 L.Ed.2d 174 (1982), the court allowed the use of the BFOQ defense to uphold the airline's maximum hiring age of forty. The court held that a BFOQ defense could be based on a combination of factors including age, along with the effects of the age sixty rule, lengthy training requirements, and experience. *Id.* at 100–01.

■ The objective of a court called upon to interpret a statute is to ascertain congressional intent and give effect to legislative will. *Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). The most obvious place to find congressional intent is in the statute. The ADEA states:

(a) The Congress hereby finds and declares that—

(1) in the face of rising productivity and affluence, older workers find themselves disadvantaged in their efforts to retain employment, and especially to regain employment when displaced from jobs;

(2) *the setting of arbitrary age limits regardless of potential for job performance has become a common practice, and certain otherwise desirable practices may work to the disadvantage of older persons;*

(3) the incidence of unemployment, especially long-term unemployment with resultant deterioration of skill, morale, and employer acceptability is, relative to the younger ages, high among older

workers; their numbers are great and growing; and their employment problems grave;

(4) the existence in industries affecting commerce, of arbitrary discrimination in employment because of age, burdens commerce and the free flow of goods in commerce.

(b) *It is therefore the purpose of this chapter* to promote employment of older persons based on their ability rather than age; *to prohibit arbitrary age discrimination in employment;* to help employers and workers find ways of meeting problems arising from the impact of age on employment.

29 U.S.C. § 621 (1982) (emphasis added). Our inquiry is aided by narrowing the prohibited conduct to *arbitrary* age discrimination.

The hearings provide some guidance as to the scope of the BFOQ defense. First, Senator Randolph was concerned that the ADEA would force airlines to hire older pilots who would retire shortly after the airlines had spent thousands of dollars over many years in training. *Age Discrimination in Employment: Hearings on S. 830 Before the Subcomm. on Labor of the Senate Comm. on Labor and Public Welfare*, 90th Cong., 1st Sess. 48–49 (1967). Secretary of Labor Wirtz responded that section 4(f)(1), which contained the BFOQ and reasonable basis other than age[2] defenses, would provide airlines with a defense. *Id.*

Second, Senator Javits, the prime sponsor of the ADEA, propounded written questions to a New York government official on the application of the BFOQ defense under New York age discrimination statute, one of the state age discrimination laws after which the ADEA was modeled. *Id.* at 242. The response stated that,

---

**2.** It shall not be unlawful for an employer, employment agency, or labor organization—

. . . . .

to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insur-

ance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual. 29 U.S.C. § 623(f)(2) (1982).

Consideration may be given to age as a bona fide occupational qualification in *such circumstances, among others,* as the following:

(a) Where age is a bona fide factor in connection with job performance.

(b) *Where age is a bona fide factor in an apprentice training or on-the-job training program of long duration.*

(c) Where age is a bona fide factor in fulfilling the provisions of other statutes (e.g., laws regulating employment of minors and females).

*Id.* (prepared written answer of Commissioner Conway, New York State Commission for Human Rights) (emphasis added). Based on the above evidence, the subcommittee that held hearings on the ADEA was cognizant of, and apparently satisfied with, the notion that the BFOQ defense need not relate solely to age and the ability to perform the assigned job.[3]

■ Regulations promulgated by the Department of Labor, the administrative body responsible for interpreting and administering the ADEA, should also be given considerable respect in interpreting the scope of the BFOQ defense. *See Ford Motor Credit Co. v. Cenance,* 452 U.S. 155, 158 n. 3, 101 S.Ct. 2239, 2241 n. 3, 68 L.Ed.2d 744 (1981). The BFOQ regulation recognizes that a BFOQ defense permits federal statutory and regulatory compulsory retirement provisions imposed to protect public safety without reference to the individual's ability to perform the job. 29 C.F.R. § 860.102(d) (1983). Again, the government body responsible for interpreting the ADEA recognizes that a BFOQ defense does not have to relate solely to the employee's age and ability to perform the job assigned.

■ Our inquiry must also be guided by 49 U.S.C. § 1421(b) (1982), which imposes on airlines the duty to perform their services with the highest degree of safety. Accordingly, "the airline industry must be accorded great leeway and discretion in determining the manner in which it may be operated *most safely." Murnane v. American Airlines, Inc.,* 667 F.2d 98, 101 (D.C.Cir.1981), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1770, 72 L.Ed.2d 174 (1982). Courts simply do not possess the expertise with which to supplant their judgment in the best manner airlines can obtain that highest degree of safety for that of the airlines. *Id.*

We conclude that American's reasons for its policy qualify as a BFOQ defense.

## 2. Whether District Court Erred in Instructing the Jury on the BFOQ Defense

Plaintiffs next urge that the BFOQ instruction was confusing and misstated the applicable standard of proof. The challenged instruction read:

One of the requirements for a bona fide occupational qualification is that it is *reasonably necessary* to the essence, or normal operation, of the employer's business, which in this case is the safe transportation of passengers. American need only show that it has a *reasonable basis* for its assessment of the safety risk involved.

American may show its policy is *reasonably necessary* to safety and is thus a bona fide occupational qualification in either one of two ways: American may show that there is a factual basis for believing that all or substantially all persons excluded by its policy would be unable to perform safely and efficiently as

---

**3.** The above evidence indicates even more strongly that the length of on-the-job training and ability of the employer to recoup its investment can constitute a BFOQ defense. This position, however, was rejected in *Smallwood v. United Air Lines, Inc.,* 661 F.2d 303 (4th Cir. 1981), *cert. denied,* 456 U.S. 1007, 102 S.Ct. 2299, 73 L.Ed.2d 1302 (1982). The *Smallwood* court relied on 29 C.F.R. § 806.103(h) (1980) and *City of Los Angeles v. Manhart,* 435 U.S. 702, 98 S.Ct.

1370, 55 L.Ed.2d 657 (1978), to support its position. Neither authority, however regards the BFOQ defense. The regulation concerns the other defense in 29 U.S.C. § 623(f)(1) (1982), reasonable factors other than age. The Supreme Court decision merely rejects cost justification as a rebuttal to a prima facie showing of sex discrimination. *City of Los Angeles,* 435 U.S. at 716 & n. 31, 98 S.Ct. at 1379 & n. 31, 55 L.Ed.2d at 670 & n. 31.

flight officers for American after having lost their ability to serve as pilots; or American may show that it is impossible or impractical to determine on an individual basis which ones can safely perform, thereby justifying a reasonable, general rule. In determining whether American has a *reasonable basis* for believing that Plaintiffs would be unable to safely perform as flight officers, you may consider more than simply the individual Plaintiff's ability to perform the tasks of the flight officer job. You may also consider the effect that allowing Plaintiffs to serve as flight officers would have on the safety of American's operation because of its effect on its other employees, crew command structure, training program or any other reason relating to safety.

(emphasis added).

■ It is well settled in the Fifth Circuit that in order to prevail on a BFOQ defense, the employer must establish:

[first,] the classification must be *reasonably necessary* to the essence of the employer's business; [and second,] the employer must have *reasonable cause*, that is, a factual basis, for believing either that all or substantially all persons within the excluded class would be unable to perform safely and efficiently the duties of the job or that it is impossible or impractical to deal with persons over the age limit on an individualized basis.

*EEOC v. University of Texas Health Science Center*, 710 F.2d 1091, 1093 (5th Cir. 1983) (emphases omitted and added).

■ Comparing the challenged jury instruction and the correct statement of the law, we hold that the jury instruction was correct. In the first paragraph of the jury instruction, the first sentence correctly states the first prong of the BFOQ test,

and the second sentence merely summarizes the second prong. In the second paragraph of the challenged jury instruction, the district court referred to the first prong and then properly and fully discussed the second prong.

### 3. Whether There was an Absolute Absence of Evidence to Establish a BFOQ Defense

■ Because plaintiffs failed to move for a directed verdict and judgment notwithstanding the verdict, this court's review of the evidence is limited to whether there was *any* evidence to support the jury verdict. *Coughlin v. Capitol Cement Co.,* 571 F.2d 290, 297 (5th Cir.1978).

■ In their briefs, plaintiffs assert that there was an absolute absence of evidence establishing a BFOQ defense, because American's evidence was not related to age and ability to perform the assigned job. We, however, have already held that factors other than age and ability to perform may be considered in establishing a BFOQ defense.

■ Furthermore, we hold that there was evidence to support the jury's verdict in favor of American. First, American presented evidence that it used the third crew position to train future pilots and that the possibility existed that so many ex-captains would become flight officers that the training position would be blocked and that safety would possibly be endangered. Second, American presented two expert witnesses who testified that in their opinion the presence of senior ex-captains in the position of third crew member created a possible hazardous situation, and that it was impossible to determine which ex-captains would pose a safety hazard.[4]

---

**4.** Plaintiffs presented evidence to rebut American's BFOQ evidence. First, plaintiffs introduced evidence that the 450–480 permanent flight engineers created a greater seat blocking problem in American's training program than would the 22 plaintiffs. Second, plaintiffs introduced evidence that senior captains, FAA officials, and American management and training

personnel had in the past ridden in the cockpit without endangering safety. Although whether a BFOQ defense is permitted where the employer allows exceptions is currently pending before the Supreme Court, *Trans World Airlines, Inc. v. Thurston,* —— U.S. ——, 104 S.Ct. 1412, 1706, 79 L.Ed.2d 739 (1984), the issue has not been presented to this court.

Finally, plaintiffs argue that the above evidence was introduced by American to prove that it was not discriminating on the basis of age and cannot now be used on appeal to prove the BFOQ defense. The court finds no support in the record for plaintiffs' claim that the evidence was so limited. Furthermore, if evidence was there for the jury to consider, it now may support its verdict.

### 4. Whether the District Court Erred in Admitting Evidence of Plaintiffs' Retirement Benefits

Plaintiffs' final contention on appeal is that the trial court abused its discretion in permitting American to introduce evidence of lump sum retirements of two of the plaintiffs.[5] Plaintiffs claim that the evidence was irrelevant and highly prejudicial, because it led the jury to believe that plaintiffs were well-heeled and not in need of gainful employment. American argues, on the other hand, that it sought to use the evidence to prove that it would have saved money by employing plaintiffs after age sixty and suspending their pension benefits, and, therefore, its safety motivation was sincere.

We hold that the district court did not commit reversible error in admitting the evidence. First, motive is often very important in discrimination actions. *See, e.g., Pullman-Standard v. Swint*, 456 U.S. 273, 277, 102 S.Ct. 1781, 1784, 72 L.Ed.2d 66, 72–73 (1982) (challenge to seniority system under Title VII requires showing of intent to discriminate racially). Second, the admission of evidence is largely within the discretion of the trial court, *Reichenbach v. Smith*, 528 F.2d 1072, 1074 (5th Cir.1976), and the trial court will be reversed only if the party asserting the error proves that substantial rights were adversely affected, *Crumpton v. Confederation Life Insurance*, 672 F.2d 1248, 1253 (5th Cir.1982). Plaintiffs do not demonstrate that their rights were substantially adversely affected.

The judgment is AFFIRMED.

---

**5.** Plaintiffs also discuss the testimony of Thomas Quinn who testified that American would have saved money by employing plaintiffs after age sixty and suspending their pension benefits. Because this testimony was heard out of the jury's presence by the district court, Mr. Quinn's testimony need not be considered.