ALASKA AIRLINES, INC., et al., Plaintiffs,

v.

William E. BROCK, et al., Defendants,

Air Line Pilots Association International, et al., Intervening Defendants.

Civ. A. No. 84–0485.

United States District Court, District of Columbia.

Jan. 22, 1986.

William T. Coleman, Jr., Richard C. Warmer, Donald T. Bliss and John Beisner, Washington, D.C., for plaintiffs.

Robert C. Seldon, Asst. U.S. Atty., Washington, D.C., for defendants.

James W. Johnson, James W. Tello, Air Line Pilots Assn., Phillip R. Kete, Stephen Crable, Ass'n of Flight Attendants, William G. Mahoney, Clinton J. Miller, John J. Sullivan and Marvin S. Cohen, Washington, D.C., for intervening defendants.

## MEMORANDUM

GESELL, District Judge.

This case involves a multitude of challenges to the Department of Labor's regu-

lations under the employee protection provisions of the Airline Deregulation Act. 49 U.S.C. § 1552. The case is before the Court after remand on motions for summary judgment or affirmance of the Secretary's regulations, there being no material facts in dispute. After reviewing the original and supplementary briefs of the parties and hearing two oral arguments on these issues, the Court makes the following rulings.

## Background

When Congress passed the Airline Deregulation Act of 1978 it included an employee protection program to protect employees who had relied on employment with regulated carriers and might be displaced in the transition to a deregulated, competitive market. Airline Deregulation Act, § 43, Pub.L. No. 95–504, 92 Stat. 1705, 1750 (1978) *codified at* 49 U.S.C. § 1552. Although this program, § 43 of the Act, has been in effect for over seven years, its turbulent history has prevented airline employees from receiving any substantial benefits from its provisions.

Section 43 contains two prongs. The first directed the Secretary of Labor to establish a program for providing displaced workers with monetary assistance funded from the United States Treasury. 49 U.S.C. § 1552(a)–(c). Congress has never appropriated funds for this program so no implementing regulations have been promulgated and no assistance has ever been provided by the government.

In addition to this monetary assistance, the statute establishes a second program, § 43(d), which obligates the airlines to give certain "protected employees" a first-right-of-hire when filling job vacancies. The Secretary of Labor's original proposed regulations were noticed for comment in 1979 but never resulted in a final rule. 44 Fed.Reg. 19146 (1979). A revised set of proposed regulations was issued in 1982 and published as a final rule in 1983. 47 Fed.Reg. 41304 (1982); 48 Fed.Reg. 53854 (1983). On the date these regulations became effective, this Court concluded that the unconstitutional legislative veto provision of

the statute was not severable from its other provisions and therefore the regulations were invalid. *Alaska Airlines v. Donovan,* 594 F.Supp. 92 (D.D.C.1984). The Court of Appeals disagreed and remanded the case to resolve plaintiffs' remaining challenges to the regulations. *Alaska Airlines, Inc. v. Donovan,* 766 F.2d 1550 (D.C. Cir.1985), *petition for cert. filed,* No. 85–920 (November 27, 1985).

Due to this combination of Congressional inaction, administrative delay and litigation, protection for airline employees has remained an unfulfilled promise. Many airlines have resisted recognizing any duty to hire or taken the position that there is no duty until the Department of Labor regulations become effective. The courts are just now beginning to address the issue of whether a private right of action exists to enforce the duty to hire. *See McDonald v. Piedmont Aviation, Inc.,* 625 F.Supp. 762 (S.D.N.Y.1986) (holding that private cause of action exists).

The Secretary has now reissued his regulations defining the airlines' duty to hire and requiring airlines to maintain a list of vacancies to assist protected employees in finding jobs. 50 Fed.Reg. 53094 (December 27, 1985). The plaintiffs, representing fifteen airlines that were certificated by the Civil Aeronautics Board prior to deregulation, argue that the Secretary's regulations are based on an erroneous and unconstitutional interpretation of the Act and that the Secretary arbitrarily and capriciously ignored the conflicts between his regulations and other legal obligations of the airlines.

## Discussion

### I. The Scope of the Duty to Hire.

■ The Airlines' primary argument is that the Secretary of Labor's interpretation of the statutory duty to hire is too broad. According to the Airlines, Congress only intended to protect the victims of deregulation—not employees who are terminated due to other reasons, such as poor business practices or general business conditions. But under the Secretary's regulations there

is no requirement that employees show that their termination or furlough was related to deregulation. An employee is eligible for the hiring preference if he had four years of service with a single regulated airline at the time of deregulation and is involuntarily terminated or furloughed within ten years after the date of deregulation. The only exceptions from this broad definition of eligibility are airline employees who are retired, terminated for cause, on strike, or who voluntarily resign or quit. 29 C.F.R. § 220.10. The Secretary maintains that the broad scope of these regulations is compelled by the language and legislative history of the Act.

Resolving this dispute requires a careful examination of the language of the Act. Congress defined the phrase "protected employee" as a person who at the date of deregulation had been employed for at least four years by a certificated air carrier. 49 U.S.C. § 1552(h)(1). The Airline's argument that not all "protected employees" are protected by the hiring preference is not based on the language of the duty to hire, but on the language used to define those eligible for monetary assistance:

> The Secretary of Labor shall, subject to such amounts as are provided in appropriation Acts, make monthly assistance payments ... to each individual who the Secretary finds, upon application, to be an *eligible protected employee*. An *eligible protected employee* shall be a *protected employee* who on account of a qualifying dislocation (A) has been deprived of employment, or (B) has been adversely affected with respect to compensation.

49 U.S.C. § 1552(a) (emphasis added). Congress defined a "qualifying dislocation" as a bankruptcy or major contraction of an air carrier occurring during the first ten calendar years after deregulation "the major cause of which is the change in regulatory structure provided by the Airline Deregulation Act of 1978, as determined by the Civil Aeronautics Board." 49 U.S.C. § 1552(h)(2).[1] Thus, displaced employees were required to trace their unemployment to a CAB determination that they were victims of deregulation in order to qualify for monetary assistance as a "eligible protected employee."

In defining the beneficiaries of the duty to hire program, however, Congress did not use the term "eligible protected employee," but provided that

> Each person who is a *protected employee* of an air carrier ... who is furloughed or otherwise terminated by such an air carrier (other than for cause) prior to the last day of the 10-year period beginning on October 24, 1978, shall have first right of hire, regardless of age, in his occupational specialty, by any other air carrier hiring additional employees ...

49 U.S.C. § 1552(d)(1) (emphasis added).

The Court cannot ignore this difference in terminology or dismiss it as accident or mistake. Congress used different terms, separately and carefully defined to describe the employees eligible for these two programs.[2] Only those who are seeking monetary assistance from the government are required to make the rigorous showing that deregulation was the cause of their termination. "Protected employees" who cannot make this showing are still "protected" by the duty to hire provision.

This interpretation is consistent with the legislative history of § 43(d). The original version of the Senate Bill limited the duty to hire to protected employees who were "furloughed or otherwise terminated ... on account of a qualifying dislocation...."

1. A "major contraction" is defined as a reduction by at least 7½ percent of the total number of full-time employees of an air carrier within a 12-month period. 49 U.S.C. § 1552(h)(4).

2. The duty to hire provisions of § 43(d) does use the phrase "eligible protected employee" to establish a special duty on the Secretary to assist those employees receiving monetary assistance from the government in obtaining reemployment. 49 U.S.C. § 1552(d)(2), (3). Congress's special concern with having these employees rehired appears to have been based on the fact that encouraging these employees to invoke the duty to hire would minimize the costs of the monetary assistance program.

S. 2493, 95th Cong., 2d Sess., § 22(d)(2) (1978). The House Bill was more generous, requiring that before carriers could exercise authority under the new act, the Secretary of Labor had to certify that the interests of airline employees who may be affected have been "adequately protected by fair and equitable arrangements providing levels of protection no less beneficial and protective of such interests than those established pursuant" to the employee protection provisions of the Interstate Commerce and Rail Passenger Service Act.[3] H.R. 12611, 95th Cong., 2d Sess., § 32 (1978). As is often the case, the Conference Committee produced a compromise. The Committee adopted almost all of the Senate Bill but deleted the "on account of a qualifying termination" requirement from the duty to hire provision. H.R.Rep. No. 95-1779, 95th Cong., 2d Sess. 105 (1978), U.S.Code Cong. & Admin.News 1978, p. 3737. Congress enacted this version, retaining the causation requirement for monthly assistance payments but extending the duty to hire to all protected employees terminated or furloughed within the ten year period after deregulation.

Nevertheless, the Airlines argue that even if a "qualifying dislocation" is not required, the Secretary should have considered whether some showing that the employees were terminated due to deregulation should still be required before they can invoke the duty to hire. There is no support in the statute or its legislative history for this position. The duty to hire in § 43(d) is without qualification and there is no indication that Congress delegated any authority to the Department of Labor to limit eligibility or create a system to determine which terminations are due to deregulation. The Secretary has consistently interpreted the statute according to its plain language since his first regulations in 1979. The Airlines' real quarrel is with Congress, which decided not to limit airline employees' rights with the same causation requirements found in some other labor protection statutes.

Congress's decision to make the hiring preference overinclusive may create a burden for the Airlines and lead to anomalous results in individual cases, but it is not unconstitutional. Airline representatives testified before Congress that there was no way to determine which employees were victims of general business circumstances and which were victims of regulatory reform.[4] Given this testimony it was reasonable for Congress and the Secretary of Labor to adopt a broad definition of the duty to hire in order to insure that employees who may have been displaced by deregulation receive some protection. If each employee had to demonstrate that their termination or furlough was connected to deregulation many deserving individuals might be denied the hiring preference. The fact that Congress apparently chose to be more generous with the airlines' money than with the public's does not provide any basis for the Court to impose a different interpretation and invalidate the Secretary's regulations. "We are not members of Congress, with the power to rewrite the terms of a law which may have revealed infirmities in its implementation." *American Federation of Government Employees, AFL–CIO v. Federal Labor Relations Authority*, 778 F.2d 850, 866 (D.C.Cir. 1985).

Even if the Secretary's position was not so strongly supported by the language of the statute and its history, the Airlines have been unable to point to any indication that Congress considered this issue and intended to limit the duty to hire. The numerous statements quoted by the Airlines only indicate that Congress intended to help those who were victims of deregulation, not that they intended to exclude

---

**3.** § 5(2)(f) of the Interstate Commerce Act, 49 U.S.C. § 11347; § 405 of the Rail Passenger Service Act, 45 U.S.C. § 565.

**4.** Statement of Richard J. Ferriss, President, United Airlines, Hearings before the Subcommittee on Aviation of the Committee on Public Works and Transportation of the House of Representatives on H.R. 8813, 95th Cong., 1st Sess. 1368 (1977).

those who could not demonstrate a connection. The Secretary of Labor's regulations are consistent with the language of the statute and his interpretation of Congress's intent is a reasonable one that must be upheld by the Court. *Chevron, U.S.A., Inc. v. National Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In addition, it may be noted that the Secretary's regulations have been before Congress since November of 1983 and despite the Court of Appeal's decision holding that § 43(d) is severable from the unconstitutional legislative veto provision, Congress has not taken any action to alter the mandate of § 43(d) or the Secretary's interpretation of it.[5]

█ Finally, the Airlines also argue that the statute and the Secretary's regulations violate due process and equal protection because the duty to hire is only imposed upon airlines that had received CAB certification before deregulation and does not apply to intrastate carriers who were never certified and new airlines that have arisen since deregulation. This contention is without merit. Economic regulation must be upheld against due process and equal protection challenges unless the statute's classification is wholly irrational. At the time the Deregulation Act was passed Congress believed that regulated carriers had been the beneficiaries of a system which protected them from competition, resulting in more costly and less efficient service to consumers. S.Rep. No. 95–631, 95th Cong., 2d Sess. 113 (1978). Congress decided that the beneficiaries of regulation should bear the burden of displacements that might occur as a result of deregulation. Placing the duty to hire on all certificated carriers as of the date of deregulation may have been a crude way of achieving this result, but it is not irrational or unconstitutional.

## II. Conflict with Other Legal Obligations of the Airlines.

The Secretary of Labor argues that many of the other challenges raised by the

Airlines are not ripe for adjudication. It is clear that many of the questions discussed or alluded to in the parties' briefs are not yet ripe. This Court need not determine whether their airline employees have a private right of action under the act as the Secretary has suggested and one federal court has found. Nor is the question of the termination date of the program ripe for decision. Nor is the issue of whether a protected employee who subsequently finds a job with another airline can quit and invoke the duty to hire preference in seeking another job ripe.

Nonetheless, the issues Airlines have pressed are ripe for review to the extent they present facial challenges to the Secretary's rulemaking. All of the prerequisites for review are satisfied. These final rules are a final agency action. They will have a "direct and immediate" impact on the way the Airlines conduct their personnel practices. Finally, the questions of whether these regulations on their face improperly conflict with other legal obligations of the Airlines are fit for judicial resolution. *Better Government Association v. Department of State,* 780 F.2d 86, 92–93 (D.C.Cir. 1986).

### A. Safety Considerations.

The Airlines argue that three aspects of the Secretary's regulations interfere with their obligation to maintain the highest possible standard of safety. Although there is no indication that Congress considered how the employee protection provisions were to relate to safety concerns, it did state that implementation of the Deregulation Act should result in "no diminution of the high standard of safety in air transportation attained in the United States on October 24, 1978." 49 U.S.C. § 1307(a). Congress and the courts have repeatedly emphasized that airlines are under a legal obligation to op-

---

5. The Airlines have also voiced a last minute objection that the reissued regulations have not been submitted to Congress for the sixty-day period required by § 43(f), 49 U.S.C. § 1552(f).

Since these regulations are substantially the same as those submitted to Congress in 1983 no resubmission is required.

erate with the highest possible degree of care. *Murnane v. American Airlines*, 667 F.2d 98, 101 (D.C.Cir.1981), *cert. denied*, 456 U.S. 915, 102 S.Ct. 1770, 72 L.Ed.2d 174 (1982).

■ The Airline's first objection on safety grounds has been thoroughly and adequately answered by the Secretary in the course of the rulemaking. The Airlines argue that the regulations' requirement that they keep a vacancy open for thirty days in order to allow a protected employee to apply for the position imposes an unworkable requirement that will, among other things, impairs safety. *See* 29 C.F.R. § 220.24. The Secretary addressed these concerns in promulgating the final rule and concluded that they were speculative in light of the industry's practice of accepting advance applications and any problems could be mitigated by maintaining files of advance applications or listing anticipated vacancies. 50 Fed.Reg. at 53095 (1985). Employees unexpectedly die, retire, become ill or resign everyday and the airlines are able to adjust by hiring temporary employees or reassigning staff without jeopardizing their safety record. The Secretary's imposition of a waiting period was not arbitrary or capricious.

■ The Airlines' second safety concern raises one rather technical defect. The regulations permit carriers to apply any prerequisites or qualifications they desire, except limitations based on seniority, recall rights or previous experience with another airline and initial hiring age (excluding retirement ages). 29 C.F.R. § 220.21. Because the initial hiring age of flight officers and pilots may affect the amount and adequacy of the training and experience they receive, the courts, in the context of the Age Discrimination Act, have recognized otherwise impermissible initial age requirements may be bone fide occupational qualifications because of the safety obligations of the airlines. *Murnane v. American Airlines*, 667 F.2d 98, 101 (D.C.Cir.

1981), *cert. denied* 456 U.S. 915, 102 S.Ct. 1770, 72 L.Ed.2d 174 (1982). Although the Airline Deregulation Act states that the duty to hire shall apply "regardless of age," another judge of this court, in construing Congress's intent in this provision, concluded that Congress must not have intended to prohibit age requirements imposed for safety reasons. "Only this interpretation preserves the important occupational qualifications required in the interest of air safety." *Murnane v. American Airlines, Inc.*, 482 F.Supp. 135, 153 (D.D.C. 1979), *aff'd*, 667 F.2d 98.

Although the interpretation in the *Murnane* decision is "dicta," it demonstrates that the Airlines' concern is a substantial one. The arguments now advanced by counsel for the Secretary for a different interpretation may be correct, but they are still after-the-fact rationalizations that cannot satisfy the need for the Secretary himself to address such an important issue when it is raised in rulemaking comments, as it was here. *Action On Smoking and Health*, 699 F.2d 1209, 1216 (1983); *Ace Motor Freight v. I.C.C.*, 557 F.2d 859, 864 (D.C.Cir.1977). Invalidating the entire rule under these circumstances is obviously not an appropriate remedy. The Court will invalidate the provision on initial hiring age as to flight officers and pilots alone, and remand the issue to the Secretary for further explanation.[6]

■ The Airlines' final safety complaint is meritless. They object that the regulations prevent them from hiring the "safest" employees possible because they have a duty to hire protected employees first. This objection was never raised in any significant way during the rulemaking. It is not a real conflict, but an effort by the Airlines to create an apparent conflict that would undermine the language and purpose of the statute. If carriers had absolute discretion to choose the "safest" applicants, the hiring preference would be virtually meaningless. Moreover, aside from

---

**6.** The Secretary need not reopen the existing record if he finds that it is adequate to address this issue on remand.

the restrictions mentioned above, the regulations permit carriers to require that job applicants, including protected employees, meet any standard qualifications the carriers" desire and give them discretion in choosing from among the pool of protected employees who meet these requirements. Finally, it is inherent in the statute itself that protected employees will already be experienced in their fields and airline safety.

## B.   Equal Employment Opportunity.

■   The Secretary's regulations provide that the duty to hire shall take precedence over any equal employment opportunity obligations unless the airline is subject to a specific equal employment requirement pursuant to a federal court or administrative order, consent decree or conciliation agreement providing relief by virtue of the carrier's unlawful employment discrimination and the airline cannot meet these requirements from the pool of employees eligible for the hiring preference. 29 C.F.R. §§ 220.01(j); 220.29. The Airlines' object that the exemption is inadequate because it conflicts with their general obligation under Title VII and other statutes and does not cover voluntary decrees which contain no admission of unlawful discrimination.

There is no merit in this contention. There is no facial conflict between Title VII and the Secretary's regulations under the Airline Deregulation Act. An individual decision or a pattern of hiring decisions dictated by the statute's duty to hire could not be the basis for a claim of unlawful discrimination against a carrier. The Airlines' challenge is largely based on a misinterpretation of the regulations, which the Department of Labor says includes any valid equal employment opportunity agreement, with or without a recital of liability. Unlike the comments on safety and hiring age, the Secretary directly addressed the Airlines' comments on conflicts with equal employment obligations by consulting with the Equal Employment Opportunity Commission, amending the initial rule to provide more flexibility and giving his reasons in the statement on the final rule.   50 Fed.Reg. at 53095–96 (1985).   His conclusion that the duty to hire should take precedence, except in those instances provided in the rule, is a reasonable accomodation of the conflicting policies.

## C.   Conflict with the Railway Labor Act.

■   The Airlines' final objection is that the regulations improperly upset the delicate employer-employee "balance" established by the Railway Labor Act by giving terminated strikers rights under the duty to hire. The contention that this will some how "tilt" the balance in a way that is inconsistent with the statutory scheme for handling labor disputes is based on the most imaginative type of speculation. The Secretary directly and adequately addressed this supposed "conflict" in fashioning the final rule and his decision was a reasonable accommodation of the policies involved.

The remaining objections in the Airlines' broadside attack are equally frivolous and must be rejected. An appropriate order dismissing the complaint, except with respect to the initial hiring age of flight officers and pilots, as indicated above, is filed herewith.