15 F.3d 1159
 304 U.S.App.D.C. 428
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Thomas J. CONBOY, Defendant-Appellee,
v.
BUREAU OF NATIONAL AFFAIRS, INC., Plaintiff-Appellant.
 No. 92-7116.
 United States Court of Appeals, District of Columbia Circuit.
 Dec. 15, 1993.
 
 Before: EDWARDS and SILBERMAN, Circuit Judges and SHADUR,* Senior District Judge, United States District Court for the Northern District of Illinois.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs filed by the parties and arguments presented by counsel. The issues have been accorded full consideration by the Court and occasion no need for an opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED that the directed verdict entered by the District Court in favor of the Bureau of National Affairs, Inc. is affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15(b)(2).
 
 ATTACHMENT
 MEMORANDUM
 
 4
 On January 28, 1990, the Bureau of National Affairs, Inc. ("BNA") ran a newspaper advertisement soliciting resumes for the position of Marketing Analysis Supervisor. The newly created position was to be supervised by Phyllis Jordan-Johnson, BNA's Marketing Services Unit Manager, and she was responsible for screening and selecting applicants for interviews. Jordan-Johnson testified that BNA's objective was "to hire someone by the end of February to fill [the] position." Trial Transcript ("Tr."), reprinted in Joint Appendix ("J.A.") 680.
 
 
 5
 After the advertisement ran, Jordan-Johnson received a large number of resumes which she reviewed daily. Each application was quickly evaluated and those with promise were set aside for interviews. It is undisputed that Jordan-Johnson had finished compiling the list of applicants to interview by February 9, 1990, and that any resume arriving after that date was not considered. See Defendant's Chart, reprinted in J.A. 898-99.
 
 
 6
 Thomas Conboy, age 61, deliberately delayed submitting his resume until several weeks after the advertisement ran in hopes of obtaining some advantage over other applicants. See Tr., J.A. 428. Conboy's resume was dated February 16, 1990, and it was received by BNA on February 21, 1990. Because she had already selected the interview pool, Jordan-Johnson did not review Conboy's resume when it first arrived at BNA. Instead, Conboy was sent a pre-printed postcard stating that BNA had received his resume and would contact him if the company wished to interview him.
 
 
 7
 Concerned that BNA's response constituted a rejection, Conboy wrote BNA a strident letter, insisting he was "exactly" qualified and demanding an interview. See Letter of Thomas J. Conboy (Mar. 1, 1990), reprinted in J.A. 875. At this point in time the interview process was well under way; but prompted by his letter, BNA reviewed Conboy's resume. Jordan-Johnson concluded Conboy was not "exactly or nearly" qualified, as his resume did not indicate any specific computer experience nor, in her opinion, did it show sufficient marketing analysis skills. Based on this evaluation, BNA responded to Conboy in a letter explaining that it did not feel he "exactly or nearly" met the qualifications for the position and that he would not be interviewed. See Letter of Carolyn D. Taylor (Mar. 23, 1990), reprinted in J.A. 878. BNA then hired another individual for the position.
 
 
 8
 Conboy sued BNA under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Sec. 621 (1988), et seq., and the District of Columbia Human Rights Act, D.C.Code Sec. 1-2501 (1981), et seq., alleging he was denied an interview solely because of his age. Conboy argued that despite there being no age listed on most resumes, Jordan-Johnson could have determined the approximate age of each applicant by looking at the resume and making two assumptions: (1) that an applicant would have graduated from college at the age of twenty-two and (2) that, in the absence of a graduation date, a person's first full-time job would have begun when he or she was eighteen. Employing these assumptions himself, Conboy's counsel estimated the ages of all those who had applied for the BNA position and then had an expert, Dr. Robert Bundens, evaluate the age disparity between those who were interviewed and those who were not. Bundens testified that the percentage of those interviewed who were over thirty-five years of age was significantly less than those who were younger and that the disparity could not be explained by chance. Tr., J.A. 354. Conboy offered this evidence to support his claim that age, rather than BNA's explanation that his application arrived too late, was the actual reason he was not interviewed. The District Court ruled the statistical proof inadmissible, citing its unreliability. Id. at J.A. 797-98, 804.
 
 
 9
 The District Court then directed a verdict for BNA, concluding that absent Conboy's statistical evaluation, there was a total lack of reliable evidence from which a reasonable jury could infer age discrimination. Id. at J.A. 802. We hold that the District Court did not abuse its discretion when it excluded Conboy's statistical proof, and that without it there is no reliable evidence that Conboy was the victim of age discrimination. After a thorough and independent review of the record, we are convinced the standard for directing a verdict is satisfied in this case and therefore affirm the judgment of the District Court.
 
 
 10
 We note at the outset that we are not bound by the determinations made by the District Court when assessing the propriety of a directed verdict. See Coburn v. Pan Am. World Airways, Inc., 711 F.2d 339, 342-45 (D.C.Cir.) (making an independent assessment of whether a judgment non obstante veredicto was justified), cert. denied, 464 U.S. 994 (1983). Instead, we conduct our own evaluation of the record to determine whether "the evidence, together with all inferences that can reasonably be drawn therefrom is so one-sided that reasonable [persons] could not disagree on the verdict." Id. at 342 (citations omitted). Thus, although we review the District Court's exclusion of Conboy's statistical analysis for abuse of discretion, United States v. Wright, 489 F.2d 1181, 1186 (D.C.Cir.1973), we determine the propriety of the directed verdict de novo.
 
 
 11
 Critical to our decision is the District Court's proper exclusion of the statistical evidence of age discrimination offered by Conboy. The fatal flaw in Dr. Bundens' statistical analysis is that it was based on a pool of applicants that included individuals who were not protected by the ADEA. The ADEA by its own terms provides a cause of action only to those who are forty years of age and older. See 29 U.S.C. Sec. 631(a) (1988); Murnane v. American Airlines, Inc., 667 F.2d 98, 100 n. 3 (D.C.Cir.1981) ("[W]e consider the guideline only at age forty inasmuch as those persons under the age of forty do not fall within that class of persons protected by the ADEA."), cert. denied, 456 U.S. 915 (1982). Consequently, the disparity Dr. Bundens found between applicants interviewed who were thirty-five and over and those who were thirty-four and younger is based on a pool which is overbroad for purposes of an ADEA suit. Conboy's counsel conceded at oral argument that Conboy failed to introduce any statistically significant evidence indicating that applicants forty and over were interviewed in substantially smaller numbers than those younger than forty. Counsel's argument that broadening the applicant pool to include those thirty-five and older makes the statistical evidence of age discrimination more reliable, suggests an ADEA plaintiff can prevail based solely on statistically significant evidence showing those persons interviewed were younger than those who were not. To the contrary, the ADEA forecloses relief for disparate treatment premised solely on relative age disparities and instead sets a benchmark of forty for bringing a lawsuit under its provisions. The fact that Congress created a specific statutory threshold demonstrates that the ADEA is not meant to protect every individual from discrimination who loses a job to a younger person.
 
 
 12
 While the statistical evidence offered in this case may be sufficient to give rise to an inference of age discrimination, it is far too broad to allow a jury to find a violation of the ADEA. Furthermore, this evidence in no way undermines BNA's proffered explanation that Conboy's resume arrived too late for consideration and thus is useless as circumstantial evidence that this explanation is a pretext. Therefore, we conclude the District Court did not abuse its discretion by excluding it from evidence.
 
 
 13
 Without statistical proof, Conboy stands without any meaningful evidence of age discrimination. All that remains is his assertion that BNA's explanation--that Conboy's resume arrived after the interview pool of applicants had been selected--was a pretext for discrimination. Conboy is correct when he argues that the factfinder may find the employer's explanation sufficiently incredible to permit an inference of discrimination. See Saint Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742, 2748 (1993). We are convinced, however, that on this record no reasonable jury could find that BNA's explanation that Conboy's resume arrived too late was a pretext.
 
 
 14
 It is undisputed that not a single person whose application arrived after February 9, 1990 was interviewed. Conboy's resume arrived on February 21. Rather than directly contesting BNA's proof that applicants whose resumes arrived after February 9 were not interviewed, Conboy elected to argue that BNA manufactured its tardiness explanation at trial and that BNA's failure to assert this explanation earlier in the proceeding is sufficient to give rise to an inference that the real reason Conboy was not interviewed was his age. This slender reed cannot withstand the weight Conboy wishes to place on it.
 
 
 15
 Contrary to counsel's insistence, BNA raised the problem of tardiness well before the eve of trial: (1) Jordan-Johnson's March 12, 1990 internal memo to the Personnel Director explained that she already had more than enough applications, J.A. 877; (2) in her deposition, Jordan-Johnson stressed the importance of timing in the selection process for interviews, J.A. 79, 81; and (3) in BNA's February 20, 1992 pre-trial statement, it stated there was a cut-off date for interviews, J.A. 114. In light of this evidence, it is immaterial that BNA did not repeat this explanation in its interrogatories, and we find nothing in them contradicting BNA's explanation regarding the cut-off of interviews.
 
 
 16
 Finally, it is true that BNA's March 1, 1990 letter to Conboy did not mention the late arrival of his resume, but this was hardly surprising. The BNA letter was responsive to Conboy's letter which exaggerated his qualifications. Contrary to Conboy's insistence he was a perfect fit for the job, Conboy failed to list any computer experience on his resume, and, in BNA's view, he did not possess sufficient marketing analysis experience, critical skills for the advertised position. Thus, BNA answered that Conboy was not "exactly" qualified.
 
 
 17
 In sum, Conboy has failed to offer any credible direct evidence that age was a determining factor in BNA's decision not to interview him. Left with only circumstantial evidence to prove that BNA's proffered reason for not interviewing Conboy was a pretext, Conboy has come up short; the record overwhelmingly demonstrates that BNA's explanation was not pretextual and thus no reasonable jury could have found age was a determining factor in this case. For these reasons,
 
 
 18
 we affirm.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. Sec. 294(d) (1988)