**Joseph A. IERVOLINO,**
**Plaintiff-Appellant,**

v.

**DELTA AIR LINES, INC.,**
**Defendant-Appellee.**

No. 84–8852.

United States Court of Appeals,
Eleventh Circuit.

Aug. 15, 1986.

Rehearing and Rehearing En Banc
Denied Sept. 25, 1986.

Alan M. Serwer, Chicago, Ill., for plaintiff-appellant.

Eugene G. Partain, Carl Cannon, Scott Greene, Thomas J. Kassin, Delta Air Lines, Inc., Hartsfield Intern. Airport, Atlanta, Ga., for defendant-appellee.

Before JOHNSON and ANDERSON, Circuit Judges, and DYER, Senior Circuit Judge.

ANDERSON, Circuit Judge:

Joseph Iervolino brought this action against his former employer, Delta Air Lines, Inc., alleging that Delta's refusal to permit him to transfer to the position of flight engineer violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.A. §§ 621–634 (West 1985). On appeal from a judgment rendered on a jury verdict for Delta, Iervolino raises numerous challenges to the jury instructions, the denial of his motion for judgment notwithstanding the verdict ("JNOV") or alternatively for a new trial, and the district court's evidentiary rulings. We affirm.

## I. BACKGROUND

In its commercial airline operation, Delta operates a variety of aircraft, including the Lockheed 1011. This aircraft requires three crew members in the cockpit: a captain, a first officer, and a second officer. The captain is the pilot and controls the aircraft. He is responsible for all phases of its operation. The first officer is the copilot and assists the captain. The second officer or flight engineer usually monitors a side-facing instrument panel, and does not operate the flight controls.

A regulation of the Federal Aviation Administration prohibits any person from serving as a pilot or first officer on a commercial flight "if that person has reached his 60th birthday." 14 C.F.R. § 121.383(c) (1985). The FAA, however, has refused to establish a mandatory retirement age for flight engineers.

Delta employed Iervolino as a captain until his sixtieth birthday. In March 1980, five months before his retirement, Iervolino requested a transfer to the position of flight engineer so that he could continue his employment beyond age 60. Delta denied Iervolino's request, and he was retired on his sixtieth birthday.

Iervolino filed this action against Delta in the United States District Court for the Northern District of Georgia, arguing that Delta's refusal to permit him to transfer to a flight engineer position violated the ADEA. Delta defended its refusal to permit Iervolino to transfer to a flight engineer position on two grounds: (1) that its policy prohibiting captains from transferring to flight engineer positions ("two-step downbid") qualified as a reasonable factor other than age ("RFOA") within the meaning of 29 U.S.C.A. § 623(f)(1) (West 1985),[1] and (2) that the under-age-60 qualification for the position of flight engineer is a bona fide occupational qualification ("BFOQ") reasonably necessary to the safe transportation of passengers.[2]

---

1. Section 623(f)(1) provides in relevant part that "[i]t shall not be unlawful for an employer ... to take any action otherwise prohibited under subsections (a), (b), (c), or (e) of this section ... where the differentiation is based on reasonable factors other than age." 29 U.S.C.A. § 623(f)(1) (West 1985).

2. Section 623(f)(1) provides in relevant part that "[i]t shall not be unlawful for an employer ... to take any action otherwise prohibited under subsection (a), (b), (c), or (e) of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of a particular business." 29 U.S.C.A. § 623(f)(1) (West 1985).

At trial, the parties offered conflicting evidence as to the existence of a policy prohibiting two-step downbids. Iervolino contended that, except for pilots approaching age 60, Delta had permitted pilots to bid for any vacancy and awarded the bids based on seniority. Between 1973 and 1984, there were 936 transfers from captain to copilot or from copilot to flight engineer by crew members under age 60 ("one-step downbid"). Iervolino presented evidence of two instances in which Delta had permitted a two-step downbid. In 1978, Delta permitted Ralph Sexton to transfer from captain to flight engineer as the result of a medical condition which precluded his continued service as a captain. When Delta acquired Northeast Air Lines, Inc. ("Northeast") in 1972, two Northeast captains were also permitted to transfer to flight engineer positions at Delta.

Iervolino also introduced evidence suggesting that former captains serving as flight engineers would not present any "role reversal" problems. Iervolino pointed out that there have been no "role reversal" problems either when senior captains ride in a cockpit observer seat with more junior captains or when captains are given proficiency checks by senior check captains or FAA inspectors. Iervolino also claimed that Delta could evaluate a former captain's ability to serve as a flight engineer on an individual basis since Delta already evaluates captains on their ability to manage their crew in all situations and observes how well crew members interact and coordinate their efforts.

Delta, on the other hand, introduced evidence that it has a long-standing policy prohibiting captains from bidding down to flight engineer positions. Delta asserts that this policy was based on the safety problems associated with two-step downbids. Expert testimony indicated that when former captains serve as flight engineers, the roles of the crew members may become confused or ambiguous and former captains serving as flight engineers may intimidate other crew members during an emergency. Several pilots also testified as to the potential problems that could result from former captains serving as second officers. Delta also argued that since an individual pilot may be entirely unaware of any difficulty in his transition to a flight engineer position until after a problem occurs, it is impossible to predict which former captains would have difficulty in making the transition.

With respect to the question of whether the under-age-60 rule is a BFOQ for the flight engineer position, Iervolino offered a variety of evidence to support his contention that a flight engineer's normal duties are less critical to the safety of a flight than those of a captain or first officer. For example, the FAA has not extended the age-60 rule to the flight engineer position because the evidence indicates that flight engineers have rarely been a contributing cause or factor in commercial aircraft accidents and because flight engineers do not manipulate any flight controls. Iervolino also introduced evidence that 485 flight engineers over the age of 60, including 134 former captains, were serving on other commercial airlines. Finally, several former captains serving as flight engineers testified that they had experienced no difficulty in safely performing the flight engineer position.

Iervolino also offered evidence that it would be possible for Delta to evaluate its flight engineers on an individual basis for potentially disqualifying medical conditions. For example, Delta has relied on FAA-mandated medical examinations to assess, on an individual basis, the ability of pilots and flight engineers to perform their jobs safely and efficiently. Iervolino pointed out that Delta had permitted pilots to return to flight duty following the diagnosis of serious medically disqualifying conditions, provided these pilots could later pass medical examinations. Delta also has a system of proficiency checks designed to ascertain whether crew members can perform the required duties of the job safely and efficiently.

Delta contended, however, that the age-60 requirement is a BFOQ for the flight engineer position. First, Delta offered evidence that the flight engineer position is essential to flight safety. Several pilots testified that a flight engineer's failure to perform his duties properly could adversely affect flight safety, especially during emergencies. An aircraft simulator demonstration and various accident reports were also introduced to illustrate the importance of a flight engineer's duties and the need for close coordination among cockpit crewmembers.

Delta also presented evidence that certain age-related diseases and infirmities (e.g., heart attacks, strokes, dementia, susceptibility to adverse drug reactions) become more prevalent at or around the age of 60, and that medical science cannot predict who will be susceptible to these diseases. Dr. John Rowe and Dr. Donald Kline concluded that there presently exists no reasonable method for Delta to evaluate its crew members on an individual basis.

After trial the jury returned a general verdict in favor of Delta, and the district court denied Iervolino's motion for JNOV or alternatively for a new trial. The following appeal ensued.

## II. ANALYSIS

On appeal, Iervolino challenges the jury instructions concerning Delta's policy prohibiting two-step downbids and the BFOQ defense, the denial of his motion for JNOV or for a new trial, and various evidentiary rulings. We consider each contention in turn.

### A. Jury Instructions

■ Iervolino raises numerous challenges to the jury instructions concerning Delta's policy prohibiting two-step downbids and the BFOQ defense. On appeal, we examine "the challenged instructions 'as part of the entire charge, in view of the allegations of the complaint, the evidence presented, and the arguments of counsel, to determine whether the jury was misled and whether the jury understood the issues.'" *National Distillers & Chemical Corp. v. Brad's Machine Products, Inc.,* 666 F.2d 492, 497 (11th Cir.1982) (quoting *First Virginia Bankshares v. Benson,* 559 F.2d 1307, 1316 (5th Cir.1977)); *see also Western Air Lines v. Criswell,* — U.S. ——, 105 S.Ct. 2743, 2755, 86 L.Ed.2d 321 (1985) (reviewing jury instructions in the "'context of the overall charge' and the circumstances of the case," including defendant's closing argument) (quoting *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)).

### 1. Downbidding Policy

Iervolino raises three challenges to the jury instructions with respect to Delta's policy prohibiting two-step downbids: (1) that the district court erroneously applied the test set forth in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to the instant case; (2) that the instructions improperly permitted Delta to defend this policy on the inconsistent grounds of the RFOA and BFOQ defenses; and (3) that the burden of disproving the RFOA defense was incorrectly placed on Iervolino rather than Delta. We find no merit in these contentions.

Iervolino's first argument is that the *McDonnell Douglas* allocation of the burden of proof was inapplicable in the instant case because he presented direct evidence that Delta's policy prohibiting two step downbids was discriminatory on its face. We reject this contention.

■ The only evidence that arguably constitutes direct evidence of age discrimination is a notation in Iervolino's personnel file that the reason for his discharge was "Mandatory Retirement—AGE 60."[3]

---

**3.** Relying on *Trans World Airlines v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), Iervolino also asserts that Delta's policy prohibiting two-step downbids is discriminatory on its face, thus making the *McDonnell-Douglas* test inappropriate in the instant case. *Thurston,* however, does not support Iervolino. In *Thurston,* the Supreme Court held that the *McDonnell-Douglas* test does not apply when the plaintiff presents direct evidence of discrimination.

Plaintiff's Exh. 9. This statement, however, is ambiguous: it could mean either that Iervolino was forced to retire from Delta at age 60 or that Iervolino was simply retired from his position as a captain but remained free to continue his employment with Delta in a non-flying position. Iervolino asserts that the record supports the former interpretation,[4] and concludes that since he presented direct evidence of age discrimination, the jury should have been instructed that if it found this evidence to be credible, then the burden shifted to Delta to prove by a preponderance of the evidence that the same decision would have been reached even in the absence of age discrimination. We do not reach the question of whether the notation in Iervolino's personnel file constituted sufficient direct evidence of age discrimination to require the giving of such an instruction because even if this notation were sufficient,

Iervolino did not object to the instructions on this ground and the failure to give such an instruction in the instant case does not constitute plain error.

Rule 51 of the Federal Rules of Civil Procedure mandates that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Fed.R.Civ.P. 51. In the absence of such an objection, we will reverse only in exceptional cases where the error is " 'so fundamental as to result in a miscarriage of justice.' " *Patton v. Archer,* 590 F.2d 1319, 1322 (5th Cir.1979) (quoting *Delancey v. Motichek Towing Service, Inc.,* 427 F.2d 897, 901 (5th Cir.1970));[5] *see also Hunt v. Liberty Lobby,* 720 F.2d 631, 647 (11th Cir.1983); *Barnett v. Housing Au-*

---

105 S.Ct. at 622. The direct evidence in *Thurston* consisted of a policy that expressly denied a privilege of employment on the basis of age:

Captains who become disqualified from serving in that position for reasons other than age *automatically* are able to displace less senior flight engineers. Captains disqualified because of age are not afforded this same "bumping" privilege. Instead, they are forced to resort to the bidding procedures set forth in the collective-bargaining agreement. If there is no vacancy prior to a bidding captain's 60th birthday, he must retire.

105 S.Ct. at 621 (emphasis added) (footnote omitted).

In the instant case, however, the parties disagreed about whether Delta's policy prohibiting two-step downbids was based on age. Although Iervolino offered evidence suggesting that this policy was only applied to captains approaching their sixtieth birthday, Delta introduced evidence that it has had a long-standing practice prohibiting such transfers, regardless of the captain's age, and that this practice was based on the role reversal problems associated with former captains serving as flight engineers. Unlike *Thurston,* Delta's policy was not discriminatory on its face, and thus could not constitute direct evidence of age discrimination.

4. The notation in Iervolino's file is not necessarily inconsistent with Delta's position that while the FAA's regulations prohibited him from serving as a captain or copilot after his sixtieth birthday and Delta's policy prohibiting any two-step downbids prevented his transfer to the flight engineer position, he remained free to continue his employment at Delta in a non-fly-

ing position. In his letter requesting a transfer to the flight engineer position, Iervolino stated that "pending relief from the [age-60] rule," he would be willing to accept "a transfer to non-flying supervisory duty or to a special assignment" provided that his seniority would "continue to accrue, and that the non-line-flying status ... would be in or from a conceded Second Officer/Flight Engineer status." Plaintiff's Exh. 3. Delta responded that it would be impossible to "honor [his] request that during any such period of employment your position on the seniority list would remain intact," but invited him to explain what non-flying supervisory duty or special assignment would be acceptable to him:

With respect to your second alternative proposal, *i.e.,* transfer to non-flying supervisory duty or special assignment, I would appreciate your letting me know exactly what you have in mind so that I may properly evaluate your request. Also, in view of the fact that you have conditioned this request on your being allowed to remain on the seniority list, I would appreciate your letting me know if you desire to pursue it in view of the fact that we will be unable to retain you on the seniority list....

Defendant's Exh. 21. However, Iervolino never responded to this request. Record on Appeal, vol. 13 at 235–36, vol. 21 at 2039–42.

5. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

*thority,* 707 F.2d 1571, 1580 (11th Cir. 1983).

Since Iervolino did not object to the instructions on the ground that the *McDonnell Douglas* analysis was inappropriate in the instant case,[6] we review the instruction under the plain error standard and conclude that the district court did not commit plain error in instructing the jury on the *McDonnell Douglas* allocation of the burden of proof. We note that Iervolino's proposed instructions were based on the *McDonnell Douglas* approach and did not request that the jury be instructed on the burden of proof in cases where the plaintiff presents direct evidence of discrimination.[7] Moreover, when the court questioned Iervolino's counsel about the appropriate allocation of the burden of proof on the RFOA defense, his counsel conceded that Delta had only the burden of production, not the burden of persuasion. *See supra* note 6.

■ Iervolino's next contention is that the instructions improperly permitted Delta to defend its policy prohibiting two step downbids as both a RFOA and a BFOQ. Iervolino claims that these defenses cannot

be asserted simultaneously with respect to the same policy since factors "other than age" by definition cannot constitute a practice where "age" is a BFOQ. We find no merit in this contention. While it is true that an employment practice cannot *simultaneously* be both a reasonable factor other than age and a bona fide occupational qualification, this does not mean that alternate theories cannot be submitted to the jury, i.e., that a particular practice is age neutral and that even if it were based on age, it is a bona fide occupational qualification. In the instant case, for example, Delta presented evidence that because of safety, it prohibited all captains, not only those who were approaching age 60, from downbidding to flight engineer positions. If the jury accepted this evidence, then Delta's policy would be a reasonable factor other than age. If, on the other hand, the jury concluded that Delta's policy were age-based, then Delta would still be entitled to justify the policy as a BFOQ.

■ Iervolino's third argument is that Delta should have the burden of persuasion

---

6. Iervolino claims that since he had objected to the use of the *McDonnell-Douglas* formulation of the burden of proof when he made his motion for a directed verdict the day before the jury was charged, it was unnecessary for him to object to the charge on the same ground. Appellant's Reply Brief at 10–12. However, after carefully reviewing the record, we find that Iervolino did not make such an objection. During Iervolino's argument in support of a directed verdict, the trial court questioned him about the proper burden of proof on Delta's RFOA defense, i.e., its policy prohibiting two-step downbids, and Iervolino's counsel initially responded that an RFOA defense was inappropriate in this case because "[w]e have a case in which age is a factor.... The fundamental policy is to oppose anyone working past 60." Record on Appeal, vol. 23 at 2436. The court, however, explained that while Iervolino had presented "some direct evidence" of age discrimination, "the question of the weight and effect of that evidence is totally a question for the jury," and then asked Iervolino whether, in such a case, Delta's policy prohibiting two-step downbids would be "the articulation of a legitimate non-discriminatory reason, which then must be rebutted by you, or overcome or shown to be pretext." *Id.* at 2438. Iervolino agreed that "in the hypothetical situation which the

court describes, which is not present here, I think that perhaps could be the view of the Fifth Circuit, at least in that case." *Id.* at 2439. Under these circumstances, we hold that Iervolino did not object to charging the jury on the *McDonnell-Douglas* test.

7. Iervolino's proposed instructions provide in relevant part:

The burden of proof is on the plaintiff to show discriminatory treatment by defendant on the basis of age by a preponderance of the evidence....

You must determine whether, taking the evidence as a whole, age was a determining factor in the decision.... If more than one factor was involved, plaintiff may prove discriminatory treatment on the basis of age if one of the factors was his age and if age made a difference in Delta's action not to permit him to work as a flight engineer (second officer) beyond his sixtieth birthday....

Defendant denies that it has discriminated on the basis of age and has contended that age was not a factor in its action. However, plaintiff may still prevail if he shows that the reasons defendant has offered were not the real reasons for defendant's actions, but were a pretext for age discrimination.

Record on Appeal, vol. 6 at 1776.

on the RFOA defense. This contention is without merit. We have repeatedly held that the plaintiff bears the burden of persuasion on the RFOA defense. *See, e.g., Haring v. C.P.C. International Inc.,* 664 F.2d 1234, 1238 (5th Cir. Unit B 1981);[8] *Houser v. Sears Roebuck & Co.,* 627 F.2d 756, 757–58 (5th Cir. Unit A 1980).

### 2. *BFOQ Defense*

Iervolino challenges the BFOQ instruction on several grounds: (1) that the jury was erroneously instructed that the under-age-60 qualification for the flight engineer position need only be "reasonably" related to safety; (2) that the instructions improperly fused the two-part BFOQ defense articulated in *Western Air Lines v. Criswell,* ⸻ U.S. ⸻, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985), by permitting the jury to consider the need for safety in assessing whether age is a necessary proxy for the flight engineer position; (3) that the jury was precluded from considering the standards of other airlines and the FAA; and (4) that the instructions improperly allowed the jury to consider non-age factors in evaluating Delta's BFOQ defense. These arguments, however, are without merit.

In *Western Air Lines v. Criswell,* ⸻ U.S. ⸻, 105 S.Ct. 2743, 2751–53, 86 L.Ed.2d 321 (1985), the Supreme Court explicitly approved the two-part test for evaluating a BFOQ defense articulated in *Usery v. Tamiami Trail Tours, Inc.,* 531 F.2d 224, 235–36 (5th Cir.1976). This test requires the employer to show (1) that the job qualifications are reasonably necessary to the essential operation of the business, and (2) that there is a factual basis for believing that all or substantially all of the persons within the class protected by the ADEA would be unable to perform the job safely and efficiently or that it is impossible or highly impractical to determine job fitness on an individualized basis. 105 S.Ct. at 2751–52. The Supreme Court specifically rejected the argument that the

first prong is satisfied where the job qualifications are "reasonable" in light of safety risks:

> This proposal is plainly at odds with Congress' decision, in adopting the ADEA, to subject such management decisions to a test of objective justification in a court of law. The BFOQ standard adopted in the statute is one of "reasonable necessity," not reasonableness.

*Id.* at 2754.

Iervolino's first objection is that the instructions incorrectly stated that the age-60 requirement need only be "reasonably" related to the safe transportation of passengers. Although the instructions at one point did improperly state that the job qualification must be "reasonable in light of considerations of safety," Record on Appeal, vol. 25 at 2830, that improper instruction was both preceded and followed by the properly articulated reasonable necessity standard. The instructions began by charging that a BFOQ must be "reasonably necessary to the employer's business," then improperly mentioned reasonableness, but then continued to properly guide the jury in determining whether there was a "significant safety risk," and if so, whether "all or substantially all of the persons excluded by the policy would be unable to perform safely," or if not all or substantially all persons, whether "some persons excluded by its policy would be unable to perform safely ..., and ... it is impossible or highly impractical to determine on an individual basis which ones can safely perform, thereby justifying a general rule." *Id.* at 2830–31. The BFOQ instructions concluded with a final statement of the proper reasonable necessity standard. *Id.* at 2832.

In closing argument, Iervolino's counsel also stated the proper standard, *id.* at 2766–71, and Delta's counsel did not contradict this statement. Moreover, a careful review of the charge conference reveals that the court and the attorneys for both

---

**8.** In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit. *Id.* at 34.

sides recognized that the proper standard was reasonable *necessity, not* mere reasonableness. It is apparent from the record that the district court intended to articulate the reasonable necessity standard. *Id.* vol. 24 at 2680–81. It is also significant that Iervolino did not specifically object to the use of the term "reasonable" in the only place that we find an improper use.[9] Evaluating the charge as a whole and its articulation of the proper reasonable necessity standard, and in light of the lack of any specific objection and the proper articulation of the standard in the argument of counsel, we conclude that there has been no reversible error.

Iervolino's next contention is that the jury instructions erroneously fused the two-step analysis of the BFOQ defense into "a single standard of almost complete deference to the employer's decision." Appellant's Brief at 25. The first step is whether the job qualification is reasonably necessary to the safe transportation of passengers. The second step is whether there is a factual basis for believing that all or substantially all of the persons within the protected class would be unable to perform the job safely and efficiently or that it is impossible or highly impractical to determine job fitness on an individualized basis. Iervolino contends that the instructions in the instant case improperly permitted the jury to consider the need for safety in determining whether the second step had been satisfied in the instant case.

 Since Iervolino did not object to the instructions on this ground at the charge conference, we review this instruction under the plain error standard, and we find no such error here. The instructions properly charged the second step, i.e., properly informed the jury of the two methods for establishing that age is a necessary proxy for the job qualification: (1) that all or substantially all of the individuals excluded by Delta's policy would be unable to perform the job efficiently and safely, or

(2) that it is highly impractical or impossible to determine which persons can perform the job safely. Iervolino asserts, however, that a subsequent reference in the instructions to the discretion that an employer has in establishing job qualifications in cases where there is a greater likelihood of harm improperly permitted the jury to consider the need for safety in assessing the second step, i.e., in determining whether age is a necessary proxy for the job qualifications. This contention is without merit. An examination of the instructions reveals that this passage refers to the first step of the BFOQ defense, i.e., whether the job qualifications are reasonably necessary to the safe transportation of passengers, not to the question of whether age is a necessary proxy for those qualifications.

 Iervolino also objects that the instructions improperly precluded the jury from considering the standards of other airlines and the FAA:

> The standard by which the reasonableness of Delta's safety precautions is to be judged is not the standard of other bodies or other airlines.
>
> Instead, its policy must be assessed against Delta's own commitment to safety as demonstrated by what it actually does in the promotion of safety in comparable areas.

*Id.* at 2832. Since Iervolino did not object to this instruction, we review it only for plain error.

In *Western Air Lines,* the Supreme Court concluded that the standards of the FAA and other airlines are relevant to an airline's BFOQ defense, but they are not to be accorded conclusive weight. 105 S.Ct. at 2754, 2756. Viewing the record as a whole, we are satisfied that the jury would have understood the relevance of the standards of other bodies in determining whether Delta's policy was a BFOQ. First, the instructions specifically informed the jury

---

9. We note that when Iervolino's counsel objected to the use of the term "reasonable" in other contexts, the district court modified the instruc- tions to satisfy these concerns. Record on Appeal, vol. 24 at 2680–81, 2688–89, 2692–96.

that the FAA did not have any regulation prohibiting the employment of second officers past age 60.[10] Record on Appeal, vol. 25 at 2833. If the jury was not intended to consider the FAA position, it would have been unnecessary for the instructions to point out what its position was. Moreover, during closing argument, Iervolino repeatedly referred to the fact that the FAA and other airlines have not imposed the age-60 rule as a job qualification for the flight engineer position, id. at 2753, 2761–62, 2770, 2771, 2782, and Delta's counsel also referred to the position of the FAA and other airlines, id. at 2808–09, 2813–14. We conclude that there is no plain error in this regard.

■■■■ Finally, Iervolino objects that the jury instructions erroneously permitted the jury to consider non-age factors in determining whether its age 60 requirement for flight engineers was a BFOQ:

> In assessing the bona fide occupational qualification defense asserted by Delta, you may consider more than simply individual plaintiff's ability to perform the task of the second officer job.
>
> You may also consider the effect that allowing the plaintiff or others [similarly] situated to serve as second officer

would have on the safety of Delta's operations because of its effect on crew command structure, crew communication, and crew concentration, or any other similar reasons relating to safety.

Id. at 2831–32. We need not decide whether the district court erred in giving this instruction because even if the consideration of non-age factors in determining whether a particular job qualification is a BFOQ were error,[11] we conclude that this error is harmless in the instant case. The reasonable factor other than age issue was properly before the jury as an issue on which Iervolino had the burden of proof. It is harmless error to also put the issue to the jury in the BFOQ context on which Delta had the burden of proof.

## B. *The Denial of JNOV and a New Trial*

Iervolino next contends that the district court erred in denying his motion for JNOV or for a new trial with respect to Delta's RFOA and BFOQ defenses. These contentions, however, are without merit.

The appropriate standard of review for the denial of a motion for JNOV is whether, considering the evidence in the light most favorable to the non-moving party,

10. The jury instructions provide in relevant part:

 The Federal Aviation Administration age 60 rule does not by its terms apply to the position of second officer or flight engineer at Delta Air Lines. The FAA has no rule or regulation prohibiting the employment of second officers or flight engineers over the age of 60.

 Record on Appeal, vol. 25 at 2833.

11. Other circuits have adopted different positions on this question. *Compare EEOC v. County of Los Angeles,* 706 F.2d 1039, 1042 (9th Cir.1983) (economic considerations cannot be considered in BFOQ defense), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984); *Orzel v. City of Wauwatosa Fire Dept.,* 697 F.2d 743, 755 (7th Cir.) (economic factors such as "the need to have a definite and financially feasible age upon which a retirement benefit formula could be based" cannot be the basis for BFOQ defense), *cert. denied,* 464 U.S. 992, 104 S.Ct. 484, 78 L.Ed.2d 680 (1983); *Smallwood v. United Air Lines,* 661 F.2d 303, 308 (4th Cir. 1981) (airline cannot defend maximum hiring age of 35 as a BFOQ because alleged harm to cockpit crew was function of seniority not age), *cert. denied,* 456 U.S. 1007, 102 S.Ct. 2299, 73 L.Ed.2d 1302 (1982); *with Johnson v. American Airlines,* 745 F.2d 988, 991–93 (5th Cir.1984) (permitting consideration of airline's seat blocking and back seat driver factors in BFOQ defense), *cert. denied,* —— U.S. ——, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985); *Murnane v. American Airlines,* 667 F.2d 98, 100–01 (D.C.Cir.1981) (permitting BFOQ defense to be based on a combination of factors including age, effects of age 60 rule, lengthy training requirements, and experience), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1770, 72 L.Ed.2d 174 (1982). We note that in the context of a sex discrimination case, we have held that because "the BFOQ defense is available only when the employer can show that the excluded class is unable to perform the duties that constitute the essence of the job," the potential for fetal harm is irrelevant to the BFOQ issue "unless the employer shows a direct relationship between the policy and the actual ability of a pregnant or fertile female to perform her job." *Hayes v. Shelby Memorial Hosp.,* 726 F.2d 1543, 1549 (11th Cir.1984).

the evidence so strongly points in favor of one party that reasonable men could not reach a contrary verdict. *See, e.g., Warren v. Ford Motor Credit Co.*, 693 F.2d 1373, 1374–75 (11th Cir.1982); *Boeing v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969) (en banc). We review the denial of a new trial under a different standard. The denial of a new trial is proper when, after weighing the evidence, the trial court cannot find that the verdict is contrary to the great weight of the evidence. *See, e.g., Jackson v. Magnolia Brokerage Co.*, 742 F.2d 1305, 1307 (11th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 2704, 86 L.Ed.2d 720 (1985). On appeal, we will reverse the trial court's denial of a new trial only for abuse of discretion. *See, e.g., Rabun v. Kimberly-Clark Corp.*, 678 F.2d 1053, 1060 (11th Cir.1982).

We conclude that the district court's denial of JNOV was proper in the instant case. Turning to the RFOA defense, we find that there is substantial evidence to support this defense. For example, Delta presented evidence that it refuses to allow any captain, regardless of age, to downbid to the flight engineer position. *See, e.g.*, Record on Appeal, vol. 16 at 866–67, 870–71, vol. 20 at 1893–94; Defendant's Exh. 21. Delta justified this policy on the ground that a former captain serving as a flight engineer would create role reversal problems. *See, e.g.*, Record on Appeal, vol. 15 at 731–33, vol. 17 at 1235–41, vol. 20 at 1830–33, vol. 21 at 2132–36, vol. 22 at 2242–44. Although Iervolino offered a variety of evidence to show that Delta did not have such a policy, the resolution of disputed facts is properly the role of the jury.

We also conclude that the BFOQ defense was amply supported by the record. With respect to the first prong of this defense (whether the age-60 rule is reasonably necessary to the safe transportation of passengers), Delta introduced ample evidence, including accident reports and the testimony of pilots, to show that the improper performance of a flight engineer's duties could adversely affect flight safety, especially during emergencies. *See, e.g., id.* vol. 16 at 974–81, 988–92, vol. 19 at 1713–22, vol. 21 at 2130, vol. 22 at 2170–71, 2240–41. There was also ample evidence in the record to establish the second prong of the BFOQ defense (either that all or substantially all individuals in the excluded group could not safely and efficiently perform the job or that it would be impossible or highly impractical to predict which individuals would be unable to perform the job). For example, Delta presented expert testimony that certain age-related diseases become more prevalent at the age of 60 and that medical science is presently unable to predict which individuals will be affected by these diseases. *See id.* vol. 17 at 1025–43, vol. 18 at 1331–39. Thus, we find that the district court's denial of JNOV with respect to Delta's RFOA and BFOQ defenses was proper.

We also find no merit in Iervolino's contention that the denial of a new trial constituted an abuse of discretion. As described above, there was ample evidence to support both defenses, and we conclude that the district court did not abuse its discretion in finding that the jury verdict was not contrary to the great weight of the evidence.

## C. *Other Contentions*

Finally, Iervolino challenges the district court's refusal to instruct the jury on his disparate impact claim and numerous evidentiary rulings. We reject these contentions.

Iervolino first contends that the district court improperly refused to instruct the jury on the disparate impact theory. He concedes that the disparate impact theory was not expressly listed as a theory of liability in the pretrial order, but claims that the references in the pretrial order and its attachments to subsections 623(a)(1) and 623(a)(2) of the ADEA, the EEOC regulations and case law involving, *inter alia*, a disparate impact claim put Delta on notice that he would present a disparate impact claim.

We will not reverse a decision of the trial court enforcing a pretrial order absent an abuse of discretion, *see, e.g., Woods v. Burlington N.R.R. Co.*, 768 F.2d 1287, 1291 (11th Cir.1985), *cert. granted on other grounds*, — U.S. —, 106 S.Ct. 1456, 89 L.Ed.2d 714 (1986); *Lloyd v. Professional Realty Services, Inc.*, 734 F.2d 1428, 1432 n. 12 (11th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 908, 83 L.Ed.2d 922 (1985), and we find no abuse of discretion in the instant case. At the pretrial conference, the district court repeatedly warned the parties that they would be held to the theories of liability designated in the pretrial order, Record on Appeal, vol. 11 at 129–30, 133–34, and Iervolino even filed a supplement to the pretrial order to include additional claims for relief, *id.* vol. 6 at 1539–40. Thus, Iervolino was put on notice that any legal theories not included in the pretrial order would be waived.

We also find that the references in the pretrial order, *id.* vol. 3 at 1432–39, were insufficient to give notice to either Delta or the court that Iervolino would rely upon a disparate impact theory. Subsections 623(a)(1) and 623(a)(2) of the ADEA do not refer to the disparate impact method of proof, and the pretrial order simply referred in general terms to the EEOC regulations on age discrimination. The case listed in the order, *Monroe v. United Air Lines*, 31 Empl.Prac.Dec. (CCH) ¶ 33,330 (N.D.Ill.1983), *rev'd*, 736 F.2d 394 (7th Cir. 1984), did involve a disparate impact jury instruction, but this instruction was simply one of several issues in the case. Since Iervolino was on notice that its legal theories had to be included in the pretrial order, and since it did not comply with this requirement, the district court did not abuse its discretion by refusing to charge the jury on the disparate impact claim.[12]

Iervolino also argues that the district court abused its discretion in several evidentiary rulings, but only three of these rulings warrant discussion. The admissibility of evidence is committed to the sound discretion of the district court, and even if error is found, the party asserting the error must show that substantial rights were adversely affected. *See, e.g., Perry v. State Farm Fire & Casualty Co.*, 734 F.2d 1441, 1446 (11th Cir.1984).

■ First, Iervolino contends that the district court erred in excluding the identities of the commercial airlines that have permitted flight engineers, including former captains, to serve after age sixty. Iervolino claims that this evidence was probative on the question of whether the age sixty requirement was a BFOQ for the flight engineer position. We agree that the exclusion of the identities of the other airlines was probably error since this evidence would have clarified that the airlines which permitted individuals over age sixty to serve as flight engineers included large commercial carriers comparable to Delta and therefore would be relevant to the question of whether Delta's age sixty requirement is a BFOQ for the flight engineer position. *See Western Air Lines v. Criswell*, — U.S. —, 105 S.Ct. 2743, 2748, 2754, 2756, 86 L.Ed.2d 321 (1985). However, we conclude that the exclusion of this evidence is not reversible error in the instant case. Iervolino was permitted to introduce the testimony of several flight engineers who had served past the age of sixty, *see, e.g.*, Record on Appeal, vol. 12 at 84–105, vol. 15 at 623–710, and a document listing 485 persons who have served or are serving as flight engineers after reaching the age of sixty, Plaintiff's Exh. 337. In his closing argument, Iervolino's counsel also emphasized that this evidence showed that allowing former captains to serve as

---

12. We respectfully disagree with the dissent's suggestion that all parties were aware that Iervolino intended to rely upon the disparate impact theory. The pretrial order was cast in the mode of a disparate treatment theory; the opening statements of both attorneys and the introductory remarks of the trial judge to the jury all assumed that the case was a disparate treatment case. Finally, the evidence in the case focused on the disparate treatment theory, and the little evidence which would also have been relevant to a disparate impact theory was also relevant to disparate treatment.

flight engineers would not create any crew coordination problems and that age was not a necessary proxy for the flight engineer position. Record on Appeal, vol. 25 at 2761–62, 2771. Iervolino also introduced evidence and emphasized in his closing argument that the FAA had not extended the age sixty requirement for captains and first officers to flight engineers, *see* Plaintiff's Exh. 317; Record on Appeal, vol. 25 at 2753, 2770–71, and the jury was instructed on the FAA's position, Record on Appeal, vol. 25 at 2833. Thus, we are satisfied that the jury was aware that the industry as a whole had not imposed an age sixty requirement for flight engineers.

█ Iervolino's next contention is that the district court abused its discretion in admitting evidence of the medical condition of Mr. A.B. Paul, another captain who had withdrawn as a plaintiff before the instant case went to trial. We reject this contention. Paul's medical condition was relevant in the instant case since it illustrated the decrements which accompany the aging process. Under Fed.R.Evid. 403, the question of whether the probative value of evidence is substantially outweighed by the risk of unfair prejudice is committed to the broad discretion of the trial court, *see Noel Shows, Inc. v. United States,* 721 F.2d 327, 329 (11th Cir.1983), and we find no abuse of discretion in the instant case.

█ Iervolino also argues that the district court abused its discretion by permitting Delta to play the cockpit tape recording from Flight 1080. Iervolino claims that this evidence was inadmissible under Fed. R.Evid. 403 since the flight engineer did not play any role in the resolution of the emergency and the probative value of this evidence was therefore outweighed by the risk of unfair prejudice. However, we find no abuse of discretion in the admission of this tape. This tape illustrated the importance of crew coordination during an emergency, and revealed the supportive role of the flight engineer during an emergency. In fact, the flight engineer involved in the incident testified that he considered questioning the captain's actions but decided to keep "[his] mouth closed." Record on Appeal, vol. 22 at 2344–46. Thus, this tape and related testimony showed the potential problem that might arise if a former captain served as a flight engineer. The district court did not abuse its discretion in finding that the probative value of this tape was not substantially outweighed by the danger of unfair prejudice.

We have carefully considered Iervolino's other challenges to the district court's evidentiary rulings, but we conclude that they have no merit and warrant no further discussion.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

JOHNSON, Circuit Judge, dissenting:

My problem with the majority's opinion is with its summary disposition of the evidentiary issues, with its resolution of the disparate impact instruction claim, and with its refusal to afford relief based upon the instructions given by the trial court on the bona fide occupational qualification question.

*Evidentiary Issues:*

Generally a trial court's rulings on admissibility of evidence will be disturbed on appeal only for abuse of discretion. *United States v. Russell,* 703 F.2d 1243, 1249 (11th Cir.1983). The trial court's decisions on the relevance of proffered evidence is also subject to an abuse of discretion standard. *United States v. Veal,* 703 F.2d 1224, 1230 (11th Cir.1983). Fed.R.Civ.P. 61 permits setting aside a verdict on grounds of error in admitting or excluding evidence if required by "substantial justice." I would hold that Iervolino has stated a valid allegation of error as to three of the trial court's evidentiary rulings and that substantial justice requires a new trial.

First, the trial court refused to admit the identities of those airlines that permit captains to make two-step downbids so as to continue flying after age 60. Iervolino's

concern is that by not revealing that these were major airlines (Alaska, American, Braniff, Flying Tiger, Northwest, Pan Am, TWA, United, USAir, Western) the jury might speculate that the appellant was talking about small carriers not comparable to Delta. The airline appellee claims that the exclusion was proper on grounds of prejudice because the jury "would have recognized the names of the carriers permitting such a practice and would have, based upon their personal experiences with those carriers, attributed poor judgment to Delta."

This is precisely why the evidence was improperly excluded. The issue is whether age is a valid proxy for a given job qualification—namely the ability safely to function as a flight engineer. Assuming *arguendo* that individualized determinations of fitness are not feasible, the best evidence one could offer to prove or disprove age-based discrimination is the general practice and experience of the industry as a whole. Thus the Supreme Court held that, in resolving a challenge to an airline's mandatory retirement policy for flight engineers and in weighing conflicting testimony, the practice of competitors is highly probative and would sustain the jury's verdict on appeal. "When an employee covered by the Act is able to point to reputable businesses in the same industry that choose to eschew reliance on mandatory retirement earlier than age 70 ... the employer's attempt to justify its decision on the basis of the contrary opinion of experts—solicited for the purposes of litigation—is hardly convincing on any objective standard short of complete deference." *Western Air Lines v. Criswell,* —— U.S. ——, ——, 105 S.Ct. 2743, 2756, 86 L.Ed.2d 321 (1985). The Court found such evidence probative and important because it assisted the jury in determining whether the company's reliance upon age as a proxy was based upon a reasonable necessity, the operative standard. By qualifying the word "businesses" with "reputable" the Court obviously anticipated that the names of these businesses would be admitted. It was an abuse of discretion to keep them

out and the result of prejudice. Upon a proper comparison between the practice of Delta and that of its major competitors the jurors might well have reached a contrary conclusion on Iervolino's age claim.

Second, the trial court permitted Delta to play for the jury a tape recording of an actual in-flight emergency. Iervolino claims it was inadmissible, pointing out that in the incident in question the flight engineer played *no role* in the resolution of the crisis and hence the probativeness was outweighed by prejudice and should have been excluded under Fed.R.Evid. 403. Delta does not contest that in this taped incident the flight engineer was not involved but argues that it was generally probative. The admission of this evidence was clear error. The relevance was nil. It was mere theatrics designed to inflame the jury; again the result was to inject into the minds of the jurors inaccurate, prejudicial information that in all likelihood skewed their deliberations.

The appellant complains third that the trial court permitted the introduction of the medical history and condition of Mr. A.B. Paul, another captain who earlier had been a party to this suit but who withdrew prior to trial. The court permitted Delta to read 177 pages of deposition into the record to show the serious health problems of this over-60 pilot as relevant to the BFOQ defense. The appellee argues that this evidence was highly probative as anecdotal evidence of "the decrements which can accompany age." Any prejudice, Delta claims, was harmless.

I believe it was clear error. Paul was not a party to this suit and there was no foundation laid to show that he was in any way representative of over-60 pilots. *Western* and the ADEA both require that employment decisions be made on an individual basis unless substantially all persons over 60 could not perform the job or there is no effective means of screening the various employees. —— U.S. at —— & n. 16, ——, 105 S.Ct. at 2750 & n. 16, 2756. Neither is the case here, at least on the evi-

dence on this record. The prejudice far outweighed any probative value.

The majority today disposes of these questions summarily. I believe that they represent serious error at the trial level, especially the first allegation of error involving the identity of other airlines that permit two-step downbids. Thus I dissent and would instead remand this case for a new trial and a new verdict untainted by such clear error.

*Erroneous Instructions:*

The trial court refused to give the jury an instruction on appellant's right of recovery under the theory of disparate impact, basing that denial on the fact that the appellant had not clearly set this forth as a theory of liability at the pretrial conference.[1] Finding that the appellant failed to raise this matter at the appropriate time, the majority would refuse to hear the claim by invoking the abuse of discretion rule. I believe that the trial court was clearly erroneous and I would reverse on this ground as well.

At the first day of trial, appellant argues, he informed the court that he intended to pursue this line in his summary of contentions and the court received evidence under this theory. Iervolino argues that when, at pretrial, his counsel informed the court that he intended to pursue his remedies under the ADEA, §§ 623(a)(1) and (2), this of necessity incorporated his intent to rely on the two theories of recovery available under the statute.

Delta did not object to introduction of evidence of disparate impact at trial nor did it object to the requested instruction on grounds of surprise or prejudice. On appeal it argues that this avenue is blocked by Fed.R.Civ.P. 16(e), which rule requires that a pretrial order "shall control the subsequent course of the action unless modified by a subsequent order." Delta argues that, because the statute does not provide in words for a "disparate impact"

remedy, mere reference to the statute does not incorporate this theory. This, of course, proves too much. The statute does not provide in words for the disparate *treatment* theory of recovery either. Both have been imported from analogous statutes. Delta's argument in a nutshell is that telling the court that one intends to present a case under the ADEA does not inform the court or the defendant that one intends to seek a remedy. This is clearly wrong.

It is clear from the transcription of the discussions at the pretrial conference that all actors below were aware that Iervolino planned to argue disparate impact. The majority overlooks the fact that at the pretrial conference, when the parties and the judge engaged in a lengthy colloquy to set forth the theories of recovery, remedy sought, and defenses offered, Iervolino's attorney clearly noted that he planned to pursue a disparate impact argument. That he planned to do so was so obvious to all parties that Iervolino's lawyer twice stated his desire not to be misunderstood as relying solely upon that theory: "I don't want the court to ... misunderstand that ours is only a disparate impact claim, it's [also] a disparate treatment claim ..." R.11–147.

Even if Rule 16(e) is implicated by the failure to include in the pretrial order the express election of the disparate impact theory, that Rule also provides that a defect may be remedied by modifying the pretrial order to "prevent manifest injustice." I would do so here. Regardless of any putative deficiencies in the pretrial order, I think it clear from the record that both the trial court and Delta knew from the beginning that this was one theory of recovery. Delta never objected to the introduction of evidence in support of this theory and failed to show that prejudice would follow from such instruction. Under these circumstances, I think the trial judge clearly erred in refusing Iervolino's re-

---

1. Appellant argues that had he been allowed to pursue this line he might have prevailed because recovery under the disparate impact theory does not require proof of intent, which must be shown in a disparate treatment case. *Nash v. Consolidated City of Jacksonville,* 763 F.2d 1393, 1397 (11th Cir.1985).

quest. Given the differences in the standard of proof for this theory, prejudice to Iervolino was inevitable.

I am likewise unable to accept the majority's determination that the trial court's instruction on the BFOQ issue was both proper and unassailable due to the operation of the plain error rule. I believe that the instructions were demonstrably improper when compared with the operative legal standard and that Iervolino should not be foreclosed from advancing this argument today because the error below was so manifest as to constitute plain error.

Appellant challenges the jury instructions because the trial court stated that the proper standard for determining whether the Delta policy constituted a BFOQ was "reasonableness" rather than "reasonable necessity." Our proper task is to review the instructions as a whole.[2] From that perspective there was plain error.

In our now seminal opinion in *Usery v. Tamiami Trail Tours*, 531 F.2d 224, 236 (5th Cir.1976), we articulated a two-step standard of review for evaluating safety-related BFOQ defenses: 1) the age-related BFOQ must be "reasonably necessary" to the "essence" of the business operation; and 2) the employer must show a) that he had a "reasonable cause" to believe that all or substantially all of a given age-based class of employees "would be unable to perform safely and efficiently the duties of the job involved" or b) that "it is impossible or impractical" to screen individual employ-

ees for age-related health problems affecting work performance. 531 F.2d 235–36.

—The "essence" prong:

In *Western* the airline directly challenged the "reasonably necessary" *Tamiami* instruction for the essence prong, arguing that more deference was due airlines to insure the essence of their business—the safety of their passengers. Western argued that it should be able to succeed on a BFOQ defense if it could show a "rational basis in fact" for its belief that flight engineers over age sixty posed a safety hazard. The Supreme Court squarely rejected this, finding that the 1978 amendments to the ADEA implicitly adopted the instruction we articulated in *Tamiami*. Congress sought "to subject such management decisions to a test of objective justification in a court of law." —— U.S. at ——, 105 S.Ct. at 2754.

The only question, then, is whether the trial court's instructions were improper because they might have led the jury to believe that the legal standard for finding a BFOQ was reasonableness.[3] Contrary to the majority, I believe that, viewed as a whole, the instructions were misleading. The trial court did use the words "reasonable necessity" in its essence instruction. But it summarized the instruction by using the words "reasonable in light of considerations of safety"—a characterization to the same effect as that requested and rejected in *Western*. —— U.S. at —— ——, 105 S.Ct. at 2753–54. A few paragraphs later the trial judge did precisely the same thing again.[4] This significantly diluted the force

---

**2.** On appeal we must examine the instructions "in the 'context of the overall charge' and the circumstances of the case .... [We must be] satisfied that the jury's attention was adequately focused" on the proper legal standards. *Western*, —— U.S. at ——, 105 S.Ct. at 2755. Thus the standard is plenary; there is no suggestion of deference or presumption as to the trial court's instructions.

**3.** In relevant part the instructions were as follows:

[I]t is Delta's burden to establish the existence of a bona fide occupational qualification, and they must establish that by a preponderance of the evidence.

Now, a bona fide occupational qualification is one which is *reasonably necessary* to the

employer's business. It is reasonably necessary if it relates to the essence of the business, which in this case is the safe transportation of passengers.

Thus, to be justified as a bona fide occupational qualification, Delta's policy must be related to the safe transportation of its passengers, or stated another way, must be *reasonable* in light of considerations of safety. R. 25–2830 (emphasis supplied).

**4.** The trial judge instructed as follows:

In this connection, I charge you that the greater the need for the exercise of safety brought about by the likelihood of harm and the probable severity of that harm in case of an accident, the more discretion the employer

of the instruction, especially when one realizes that the words "reasonable necessity" were buried in a mass of verbiage extending over three typed pages.

Our case law has held that an argument waived in the trial court may be reviewed on appeal only for "plain error," which we have defined as error that is "both obvious and substantial." *United States v. Smith*, 700 F.2d 627, 633 (11th Cir.1983). In light of the clear holdings of the former Fifth Circuit in *Tamiami*, and of the Supreme Court in *Western*, there is no question but that the error in the trial court's instruction ought to have been obvious to all. Further, that error was substantial because it expanded the extremely narrow BFOQ exception contrary to the clear intent of Congress and the holding of the Supreme

Court.[5] Thus, I believe we can and should reach this allegation of error and grant relief in the form of a new trial.

—The second prong:

The second prong requires showing either of two possible justifications for age-based discrimination—that all or nearly all people over sixty would be unable to perform safely the task of flight engineer, or that while some would not be able to perform it there is no feasible way to separate the wheat from the chaff.[6] The appellant argues that the court's instructions on the second prong incorporated irrelevant issues that again diluted the force of the legal standard by suggesting that the jury should be unduly deferential to Delta's safety concerns.[7]

---

may lawfully exercise in establishing job qualifications. Where the risks are high and the requirements for the exercise of safety are great, the law permits an employer to establish more stringent employee standards, if it can show that such standards are *reasonably necessary* to reduce the risks of harm to any significant degree.

The standard by which the *reasonableness* of Delta's safety precautions is to be judged is not the standard of other bodies or other airlines.

R. 25–2832 (emphasis supplied).

5. While the Supreme Court said clearly that the BFOQ standard is "reasonable necessity," *Western*, 105 S.Ct. at 2754, it two weeks later denied *certiorari* on a Fifth Circuit case that had jury instructions virtually identical to those in this case. *Johnson v. American Airlines, Inc.*, 745 F.2d 988, 993–94 (5th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985). Of course denial of *certiorari* is not properly taken to be a statement as to the merits of the case, *Maryland v. Baltimore Radio Show*, 338 U.S. 912, 919, 70 S.Ct. 252, 255, 94 L.Ed. 562 (1950) (Opinion of Frankfurter, J., respecting denial of *certiorari*). The instructions in *Western* and *Johnson* cannot be reconciled; accordingly, we must follow the *Western* standards, which suggest that the instructions here were incorrect.

6. Our opinion in *Tamiami* suggests that the required showing is one of "reasonable cause." While the Supreme Court relied upon *Tamiami* as the controlling standard it *sotto voce* modified *Tamiami* so that the second prong is also governed by the reasonably necessary standard. —— U.S. at ——, 105 S.Ct. at 2756.

7. The judge first stated the proper two-part inquiry on the second prong, then went on, in

relevant part, to modify the instructions as follows:

[Y]ou may consider more than simply the individual plaintiff's ability to perform the duties of the second officer job.

You may also consider the effect that allowing the plaintiff or others situated to serve as second officer would have on the safety of Delta's operations because of its effect on crew command structure, crew communication and crew concentration or any other similar reasons related to safety.

In this connection, I charge you that the greater the need for the exercise of safety brought about by the likelihood of harm and the probable severity of that harm in case of an accident, the more discretion the employer may lawfully exercise in establishing job qualifications. Where the risks are high and the requirements for the exercise of safety are great, the law permits an employer to establish more stringent employee standards, if it can show that such standards are reasonably necessary to reduce the risks of harm to any significant degree.

The standard by which the reasonableness of Delta's safety precautions is to be judged is not the standard of other bodies or other airlines.

Instead, its policy must be assessed against Delta's own commitment to safety as demonstrated by what it actually does in the promotion of safety in comparable areas.

And also, your assessment will be based on and considered by you in light of all of the other evidence in the case, on the risks involved, and the tendencies, if any, of Delta's policy to reduce those risks.

R. 25–2831–32.

Here there is plain error in two respects. First, the language in the third paragraph quoted in footnote 7 of this dissent is the so-called "adjusts to the safety factor" clause that belongs as a modifier of the essence prong. *Western*, —— U.S. at ——, 105 S.Ct. at 2751. Instead the trial court buried it in the discussion of the second prong. Placement is important because this sliding scale determines only the extent to which safety is the essence of the business. It permits a "looser fit" in defining "essence," thus introducing *subjective* factors into the analysis. By placing the safety instruction where it did, the trial court permitted the jury to consider the need for flight safety in considering the second prong's job fitness inquiry. This subjectivity is reinforced by the last, "all other evidence" paragraph in footnote 7 that invites an open-ended incorporation of whatever other factors suit the jury's fancy.

On the other hand, the second prong should function as a strictly *objective* test. The employer must show that nearly all those over sixty are unable to do the job, as defined by objective factors, or that there is no valid scientific measure that permits determining who is or is not capable. The first prong focuses on business safety factors that are *independent* of age; the second prong focuses on those cases where age is a *permissible proxy* for these safety factors. By placing this clause in the instruction after the second prong's discussion of the effects of age on the employee, the trial court impermissibly redirected the focus, permitting looser fit for age-based generalities not tailored to the individual traits of employees.

Again, I would find this plain error. The effect was to conflate the two prongs, making it impermissibly easier for the employer to show a BFOQ by means of aggregate characteristics "inconsistent with the preference for individual evaluation expressed in the language and legislative history of the ADEA." *Western*, —— U.S. at ——, 105 S.Ct. at 2756. The potential for jury confusion was obvious. Even if placement were not a problem, the trial court again summarized the standard as reasonableness instead of reasonable necessity. Either way it was error that justifies relief.

Second, the instructions stated in the fourth and fifth paragraphs of footnote 7 that this "adjust to the safety factor" requires the jury to defer to the particular safety standards that Delta itself has chosen to adopt—rather than to compare them with general industry standards. This is squarely at odds with *Western*. There too the airline argued that the jury should be instructed to "defer to 'Western's selection of job qualifications for the position of [flight engineer] that are reasonable in light of the safety risks.' ... This proposal is plainly at odds with Congress' decision, in adopting the ADEA, to subject such management decisions to a test of *objective* justification in a court of law. The BFOQ standard adopted in the statute is one of 'reasonable necessity,' not reasonableness." —— U.S. at ——, 105 S.Ct. at 2754 (emphasis supplied, brackets in original). Demonstration of an objective justification for a mandatory retirement and no downbid policy, of necessity, required that the jury be directed to the standards of the industry, not merely to those enunciated by the defendant. The Supreme Court expressly held such evidence relevant and probative, though not necessarily dispositive, of this question. *Id.* The fact that so many allow what Delta denies suggests that the policy is not a BFOQ because it does not go to the essence of the business. It was both obvious and substantial error for the trial court to exclude this evidence from the jury's consideration, and I believe it constitutes grounds for reversal.

I would reverse the judgment below and remand this case for a new trial untainted by the various errors noted.