817 F.2d 1556
 43 Fair Empl.Prac.Cas. 1702,
43 Empl. Prac. Dec. P 37,211, 39 Ed. Law Rep. 72
 Isaac F. CHILDERS and Quentin Hendrix, Plaintiffs-Appellants,
v.
MORGAN COUNTY BOARD OF EDUCATION; Charles W. Thompson,
individually and in his official capacity as
Superintendent of Education; Martin
Nelson, et al., Defendants-Appellees.
 No. 86-7326.
 United States Court of Appeals,
Eleventh Circuit.
 June 2, 1987.
 
 Edward Still, Birmingham, Ala., Theron Stokes, Montgomery, Ala., Gary L. Sasso, Bredhoff & Kaiser, Peter O. Shinevar Washington, D.C., for plaintiffs-appellants.
 Rynthia Rost, Washington, D.C., amicus curiae for E.E.O.C.
 Robert H. Harris, Caddell, Shanks, Harris, Moores & Murphree, Decatur, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before RONEY, Chief Judge, JOHNSON, Circuit Judge, and ESCHBACH*, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 The Morgan County Board of Education (Board of Education) has a policy that requires its bus drivers to retire at age 65. The plaintiffs, Isaac F. Childers and Quentin Hendrix, were school bus drivers employed by the Board of Education who were forced to retire when they reached age 65. They brought suit challenging this mandatory retirement policy as violative of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C.A. Sec. 621 et seq. The district court granted summary judgment for the Board of Education on the ground that the age 65 requirement is valid as a bona fide occupational requirement (BFOQ) and thus is not prohibited by the ADEA. 29 U.S.C.A. Sec. 623(f)(1). We reverse and remand because there is a genuine issue as to a material fact: the feasibility of testing older employees individually for driving safety.
 
 
 2
 Age is a lawful factor for employment decisions if it meets "a bona fide occupational qualification reasonably necessary to the normal operation of the particular business...." 29 U.S.C.A. Sec. 623(f)(1). In Western Airlines v. Criswell, 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985), the Supreme Court adopted the two-pronged BFOQ test first articulated in Usery v. Tamiami Trail Tours, Inc., 531 F.2d 224 (5th Cir.1976). Under this test, the employer must prove first, the existence of a job qualification "reasonably necessary to the essence of [its] business;" and second, that it is compelled to rely on age as a proxy for safety-related job qualifications. Criswell, 472 U.S. at 413, 105 S.Ct. at 2751, 86 L.Ed.2d at 333.
 
 
 3
 The plaintiffs here concede, as they must, that the defendants meet the first prong, namely, that the ability of school bus drivers to drive safely is "reasonably necessary" to their transportation responsibilities. The defendants do not seek to meet the second prong on the ground that all or substantially all people over age 65 would be unable to safely operate a school bus, but rather on the ground that there is undisputed evidence showing that it is "impossible or highly impractical" to test older employees on an individual basis for safety.
 
 
 4
 The record reveals, however, a significant difference of opinion among the experts on the feasibility of testing people age 65 and older for safety. The issue is drawn by conflicting deposition and affidavit testimony.
 
 
 5
 The defendants rely heavily on the deposition testimony of Dr. Julian Waller, a professor of medicine in the gerontology unit of the University of Vermont medical school. Dr. Waller testified that chronological age is the best means of testing for driving safety. According to Dr. Waller, this is because "normative aging" affects the ability of these drivers, and the deterioration associated with the aging process cannot be evaluated through individualized testing. "Normative aging" results in significantly increasing impairment among groups ages 50-55, 55-60, 60-65, 65-70 and onwards, and Dr. Waller related higher crash rates for older groups. The aging process produces deterioration in vision, stamina, cardiovascular reserve (spare capacity), response to split task, problem solving, tolerance of stress, and ability to concentrate.
 
 
 6
 On cross-examination, however, Dr. Waller admitted that many of these normative changes can be measured. He noted that many aspects of vision, including response to glare, muscle strength, reduction in stature, and reaction time are conditions that can be subjected to testing. Dr. Waller was also questioned about a 1974 article in which he stated:
 
 
 7
 In my opinion, it is possible to identify which groups are likely to have increase in crash risk, and I believe it is further possible to select a substantial portion of the high-risk individuals. In one study, we compared essentially healthy middle-aged drivers with elderly drivers who were healthy, had cardiac disease, had signs and symptoms of senility, or both; signs and symptoms of senility included observed presence of tremor and reported slowing of thought processes or increases in forgetfulness. Basically the data showed that apparently healthy, older drivers do not have an appreciable increase in crash risk over that of middle-aged drivers, but that such an increase is associated with medical impairment.
 
 
 8
 Dr. Waller stated that he still believed this statement to be accurate, but attempted to distinguish the article as relating to people who drive automobiles, not school buses.
 
 
 9
 Plaintiff's expert, Dr. Harvey L. Sterns, the Director of the Institute for Lifespan Development and Gerontology at the University of Akron and a Professor of Gerontology at the Northeastern Ohio University College of Medicine, challenged Dr. Waller's contention that many conditions subject to normative aging cannot be adequately tested. First, he states that stress tests and driving tests with EKG could be used to screen drivers. Second, there are means to assess dynamic visual acuity. Third, he points to the National Highway Traffic Safety Administration's manual, which recognizes that incapable older drivers can be effectively screened out:
 
 
 10
 No person over the age of 65 should be hired to drive a school bus. Those who reach the age of 65 while employed as drivers may be permitted to drive as long as health and operating skills permit. Physical examinations for drivers over 65 should be required more frequently than for younger drivers. At least every six months is recommended.
 
 
 11
 Dr. Sterns states that many of Dr. Waller's observations concerning the adverse effects of aging on driving ability are not supported by empirical evidence. He specifically points to the lack of empirical evidence to support Dr. Waller's observations that older drivers suffer from fatigue, reduced learning capability and split task responsiveness to a much greater degree than younger drivers as these factors relate to accident rates.
 
 
 12
 This recitation of the expert testimony is only meant to illuminate the fact that there is a genuine issue of material fact regarding the merits of this dispute, regardless of what inexpert intuition may be. The issue here is not whether aging affects the ability to drive a school bus. The issue is whether people can be individually tested to meet the safety requirements of the job.
 
 
 13
 Cases which rely heavily on expert testimony, as is the case here, do not easily lend themselves to summary judgment. Indeed most of the public safety age discrimination cases seem to have been resolved at trial. See, e.g., Iervolino v. Delta Air Lines, Inc., 796 F.2d 1408 (11th Cir.1986); Tamiami Trail, 531 F.2d 224; Maki v. Commissioner of Education of State of N.Y., 568 F.Supp. 252 (N.D.N.Y.1983), aff'd mem., 742 F.2d 1437 (2d Cir.1984). Under Fed.R.Civ.P. 56, this issue cannot be resolved on a motion for summary judgment.
 
 
 14
 REVERSED and REMANDED.
 
 
 
 *
 Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation